A05A1466. CAROLINA v. THE STATE.
(623 SE2d 151)

BERNES, Judge.

A Fulton County jury convicted Mandell Carolina of one count of enticing a child for indecent purposes[1] and one count of solicitation of sodomy for money with a child under 17.[2] He appeals from the denial

[1] OCGA § 16-6-5.
[2] OCGA § 16-6-15.

of his motion for new trial, challenging the sufficiency of the evidence in support of his convictions and the denial of his motions for a directed verdict on the charged offenses. Furthermore, Carolina challenges aspects of the hearsay testimony of the child victims and the jury charge. For the reasons set forth below, we affirm.

Viewed in the light most favorable to the verdict, the evidence shows that Carolina asked Q. D., a 12-year-old child, if she wanted to go to the flea market with him to make some money by selling tapes and compact discs. With her mother's permission, Q. D. went along. After eating lunch at a nearby fast food restaurant, Carolina told Q. D. that he needed to go to his house to charge his cellular phone. Again, Q. D. went with him.

Upon getting to Carolina's house, Q. D. saw that there was no furniture in the living room and went into his bedroom. There she found the only chair in the room covered with clothes and sat down on the edge of the bed. Carolina joined Q. D. in the bedroom, started a pornographic videotape, and sat down beside her on the bed to watch it on television. As the videotape ran, Carolina asked Q. D. several questions:

> He asked me have I ever came like that? Do I got a boyfriend? Have my boyfriend ever kissed me? Have a boy ever tasted me? . . . Can he make me feel good? If he gave me money, what I do for him?

Q. D. believed that Carolina was asking her "to have sex with him if he gave [her] money." In addition, Carolina asked Q. D. to engage in what he termed an "experiment" about trust in which she was to lie down on the bed and allow him to apply lotion to her legs. Q. D. asked to leave, and Carolina obliged. As they stood waiting at a bus stop, Carolina asked Q. D. if she could keep a secret.

P. B., an 11-year-old child, testified that she also had accompanied Carolina to the flea market to sell compact discs and tapes. After buying food at the mall, Carolina told P. B. that they would eat at his house, again on the claim that he needed to charge his cellular telephone and pick up more tapes and compact discs. At first, P. B. sat on the front porch; however, she went inside when Carolina told her it would "take a while for [his] phone to charge" and asked her to come into the house.

Once inside, P. B. went into Carolina's bedroom as Q. D. had done. There, she initially sat down on the chair in the room but then moved to the edge of the bed on Carolina's invitation. Carolina sat beside her, took her hand, and began rubbing the center of it. When Carolina laid down still holding her hand in an attempt to have her lay down with him, P. B. "jerked [her] hand away." "When [Carolina]

started asking [her] all kinds of questions, [P. B.] told him [she] was ready to go." Carolina persisted and began questioning P. B.:

> He asked me have I ever came before. He asked me if a boy ever ate me out before. Do I have a boyfriend? Then he was like, he was like if he give me $40 and some contacts and some CDs, what would I do to make him feel good?

P. B. further testified that the two of them watched music videos on television in which a "man was standing up and the lady was tapping on the man's penis." After asking P. B. if she had "ever seen dancing like that before," Carolina asked her if she had ever done it. Thereafter, Carolina continued questioning P. B. about her boyfriends and about whether she had any prior sexual experience.

Q. D. reported what had happened to her mother. P. B. told her grandmother. When Q. D.'s mother confronted Carolina about what had occurred, he attempted to flee; however, she and a neighbor managed to hold him until the police arrived.

A Fulton County grand jury returned an indictment charging Carolina with two counts of false imprisonment; one count of enticing a child for indecent purposes (which was based on his alleged interaction with Q. D.); and one count of solicitation of sodomy with a child under 17 (which was based on his alleged interaction with P. B.). Following a jury trial, Carolina was acquitted on the two false imprisonment counts but convicted on the remaining two counts.

1. Carolina contends that insufficient evidence supports his conviction for enticing Q. D. for indecent purposes. He argues that there was insufficient evidence showing that he enticed Q. D. to his home with the present intention to commit acts of indecency or child molestation. Carolina further argues that the State failed to prove the "asportation" element of the offense. Additionally, Carolina challenges the sufficiency of the evidence supporting his conviction for solicitation of sodomy, contending that P. B. only testified that he sought "sex" with her, not an act of sodomy.

When reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998). We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

(a) Enticing a Child for Indecent Purposes. The indictment charged Carolina with enticing Q. D. for indecent purposes in violation of OCGA § 16-6-5. "A person commits the offense of enticing a

child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." OCGA § 16-6-5 (a).

> The crime of enticing a child for indecent purposes in violation of OCGA § 16-6-5 requires the showing of a joint operation of the act of enticing a child and the intention to commit acts of indecency or child molestation. Accordingly, neither the act of enticing a child without the requisite intent nor the intent to commit acts of indecency or child molestation without the requisite act would constitute a crime under OCGA § 16-6-5.

*Lasseter v. State,* 197 Ga. App. 498 (1) (399 SE2d 85) (1990). Asportation is an element of enticing a child for indecent purposes, see id., and is satisfied whether the "taking" involves physical force, enticement, or persuasion. See *Cimildoro v. State,* 259 Ga. 788, 789 (1) (387 SE2d 335) (1990); *Dennis v. State,* 158 Ga. App. 142 (2) (279 SE2d 275) (1981).

The evidence in this case supports the conclusion that Carolina enticed Q. D. to his house with the present intention of attempting to engage in a sexual encounter with her. Viewing the facts in the light most favorable to the verdict, the jury was entitled to conclude that Carolina lured Q. D. to his home under the false pretense of needing to charge his cell phone. That Carolina's real reason for taking Q. D. to his home was to engage in sexual conduct was established by Carolina's subsequent actions inside his home after he had lured Q. D. there. See *Peavy v. State,* 159 Ga. App. 280, 282 (1) (a) (283 SE2d 346) (1981). Based on Q. D.'s testimony, the jury could conclude that Carolina placed a pornographic videotape in his videocassette recorder in Q. D.'s presence; asked her sexually suggestive questions regarding the contents of the videotape as they watched it; and, in the context of the videotape, asked her what she would do "to make him feel good" for money. This evidence was sufficient to establish that Carolina acted with the requisite intent at the time he enticed Q. D.

The evidence also was sufficient to establish the asportation element of the charged offense. The fact that Q. D. went voluntarily with Carolina to his home did not foreclose a showing of asportation because it is clear from the evidence that Carolina persuaded Q. D. to come with him. See *Cimildoro,* 259 Ga. at 789 (1); *Dennis,* 158 Ga. App. at 142 (2). Asportation thus was sufficiently shown in this case.

Under these circumstances, we conclude that a rational trier of fact could have found Carolina guilty beyond a reasonable doubt of enticing a child for indecent purposes. *Jackson,* 443 U. S. at 318-319 (III) (B).

(b) Solicitation of Sodomy. The indictment charged Carolina with soliciting P. B. to perform an act of sodomy in violation of OCGA § 16-6-15. "Sodomy" is defined as "any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a).

On direct examination, the prosecutor asked P. B. what she thought Carolina meant when he offered to give her money "to make him feel good" after he had asked her if she had ever "came before" and whether "a boy ever ate her out." P. B. responded that she believed that he was asking her "to have sex with him" in exchange for money.

Carolina argues that the term "sex" as used by P. B. was too vague to support a conviction for sodomy. However, the jury was authorized to consider P. B.'s use of the term "sex" in the context in which it was used rather than in the language of the statute or other technical language to such effect. See *Anderson v. State*, 142 Ga. App. 282, 283 (1) (235 SE2d 675) (1977). As argued by the State, "sex" could mean "oral sex" in this context, considering the fact that Carolina asked P. B. if she would "make him feel good" after questioning her about whether oral sex had ever been performed on her. Therefore, the evidence authorized the verdict and judgment as to the offense of solicitation of sodomy. *Jackson*, 443 U. S. at 318-319 (III) (B).

2. In light of our disposition of Division 1, the trial court did not err in denying Carolina's motion for a directed verdict on the charged offenses at trial. "[T]he standard of review for [the] denial of a motion for [a] directed verdict [of acquittal] is the same as that for determining the sufficiency of the evidence to support a conviction." (Footnote omitted.) *Hash v. State*, 248 Ga. App. 456, 457 (1) (546 SE2d 833) (2001).

3. Carolina contends that the trial court erred in allowing a child psychotherapist's videotaped interviews with the victims into evidence under the Child Hearsay Statute, OCGA § 24-3-16, because he was not indicted for conduct involving sexual contact or physical abuse. He also contends that the videotaped interviews should not have been allowed into evidence because they impermissibly bolstered the victims' testimony.

We reject Carolina's contention that admission of the videotaped interviews under the Child Hearsay Statute was inappropriate because he was not indicted for offenses requiring proof of sexual contact or physical abuse. We do not interpret the Child Hearsay Statute so narrowly. The Child Hearsay Statute applies to descriptions of physical abuse or sexual contact. OCGA § 24-3-16. Sexual contact between a victim and perpetrator can be merely verbal. See generally *Hicks v. State*, 254 Ga. App. 814, 816 (2) (563 SE2d 897) (2002); *Bowman v. State*, 227 Ga. App. 598, 600 (1) (490 SE2d 163)

(1997). Accordingly, we cannot say that the descriptions by the child victims of their encounters with Carolina in this case did not involve "sexual contact" for purposes of the hearsay statute.

We likewise conclude that Carolina's claim of impermissible bolstering does not provide a basis for reversal. Because Carolina did not raise his bolstering claim in the court below, he has not preserved it for our review on appeal. *Reynolds v. State*, 257 Ga. 725 (1) (363 SE2d 249) (1988).

4. Carolina asserts that the trial court erred in charging the jury on the Child Hearsay Statute but does not support his claim of error by citation of authority or reasoned argument. Accordingly, we deem this claim of error abandoned. Court of Appeals Rule 25 (c) (2). Even were the contrary true, we have reviewed the trial court's charge and find it to be an accurate statement of the law.

5. Carolina claims that the trial court improperly expanded the indictment by instructing the jurors on the statutory definition of enticing a child for indecent purposes (OCGA § 16-6-5) and solicitation of sodomy (OCGA § 16-6-15), without contemporaneously charging them that he could be found guilty only if they determined that he committed the offenses in the specific manner alleged by the indictment. Thus, Carolina argues that his due process rights were violated because the jury may have convicted him on grounds not set out in the indictment.

(a) Enticing a Child for Indecent Purposes. The statutory definition of enticing a child for indecent purposes, which the trial court tracked verbatim in its jury charge, is stated in the disjunctive: "A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, *or* takes any child under the age of 16 years to any place whatsoever. . . ." (Emphasis supplied.) OCGA § 16-6-5 (a). The indictment in this case charges Carolina with "soliciting, enticing, *and* taking Q. D. and playing sexually explicit tapes in the presence of said child for the purpose and intent of committing immoral and indecent acts." Carolina contends that the trial court's instruction tracking the language of the statute in the disjunctive violated his due process rights by allowing the jury to convict him if it found that he solicited, enticed, *or* took Q. D., since the indictment required that the jury find that he solicited, enticed, *and* took Q. D. We disagree.

Carolina's argument is predicated on too narrow a reading of the indictment. The present situation is controlled by cases such as *Hostetler v. State*, 261 Ga. App. 237, 239-240 (2) (582 SE2d 197) (2003) and *Hathcock v. State*, 214 Ga. App. 188, 190-191 (4) (447 SE2d 104) (1994). In those cases, the defendant argued that there was a fatal variance between the indictment and evidence presented at trial since the indictment charged him with exposing his penis with intent

to arouse and satisfy both his *and* the child's sexual desires, but there was no evidence presented that he intended to arouse the child's sexual desires. In rejecting the defendant's argument, we explained:

> When an indictment charges a crime was committed in more than one way, proof that it was committed in one of the separate ways or methods alleged in the indictment makes a prima facie case for jury determination as to guilt or innocence. In view of the conjunctive form of the indictment in this case, it was not incumbent upon the State to prove that defendant intended to arouse both his and the child's sexual desires. There was no fatal variance because the evidence was sufficient to show defendant committed child molestation in one of the ways alleged in the indictment.

*Hostetler*, 261 Ga. App. at 240 (2), quoting *Hathcock*, 214 Ga. App. at 190 (4).

Based on this case law, it is clear that when an indictment charges that a crime was committed in more than one permissible way — as in this case by the use of the conjunctive "and" — proof at trial that the crime was committed in one of the ways expressed in the indictment is sufficient to sustain the conviction. As such, there is no contradiction between the statutory definition of enticing a child for indecent purposes and the indictment in this case since both are properly read as stating that Carolina could be convicted if the jury concluded that he solicited, enticed, *or* took Q. D. And, our review of the record leads us to conclude that the evidence was sufficient to show that Carolina committed the charged offense in at least one of the ways alleged in the indictment. Hence, we find no error.

(b) Solicitation of Sodomy. The indictment charged Carolina with soliciting P. B., a "child under the age of 17 years, to perform . . . an act of sodomy." However, the trial court instructed the jury: "A person commits the offense of solicitation of sodomy when he solicits another to perform *or* submit to an act of sodomy." (Emphasis supplied.) OCGA § 16-6-15 (a). Carolina contends that the trial court's instruction tracking the language of the statute in the disjunctive violated his due process rights by allowing the jury to convict him if it found that he solicited P. B. to perform *or* submit to an act of sodomy, where the indictment required that the jury find that he solicited P. B. to perform an act of sodomy. We find no prejudicial error in the trial court's instruction under the circumstances of this case.

"It is error to charge the jury that a crime may be committed by alternative methods, when the indictment charges it was committed by one specific method." (Citation and punctuation omitted.) *Pettway v. State*, 204 Ga. App. 804 (420 SE2d 619) (1992). See also *Walker v.*

*State*, 146 Ga. App. 237 (246 SE2d 206) (1978). Nevertheless, the error is prejudicial only if there is a reasonable possibility that the jury was misled by the charge and "convicted the defendant of the commission of a crime in a manner not charged in the indictment." (Citation and punctuation omitted.) *Pettway*, 204 Ga. App. at 804.

Based on our review of the record, we conclude that there is no reasonable possibility that the jury was misled into convicting Carolina of solicitation of sodomy in a manner not charged in the indictment. There was no evidence presented at trial that Carolina solicited P. B. *to submit* to an act of sodomy: P. B. herself testified that Carolina never asked her if he could perform oral sex on her. As such, based on the evidence presented at trial, there was no risk that the jury would have convicted Carolina on the basis that he solicited P. B. to submit to an act of sodomy, and thus no risk that Carolina was convicted on a basis not charged in the indictment. It follows that no prejudicial error was committed. See *Simmons v. State*, 207 Ga. App. 171, 172 (427 SE2d 560) (1993); *Slack v. State*, 159 Ga. App. 185, 188-189 (2) (283 SE2d 64) (1981).

Additionally, during closing argument, the prosecutor made clear that the State was only seeking to convict Carolina of soliciting P. B. *to perform* an act of sodomy. The prosecutor repeatedly emphasized this point, commenting that "obviously, solicitation of sodomy is soliciting another *for* sodomy," that Carolina "solicited her *for* sodomy," and that Carolina "offer[ed] her money to make *him* feel good." (Emphasis supplied.) This further counsels against concluding that the jury was misled by the trial court's charge.

Finally, the trial court began its charge by reading the indictment to the jury; the jury was instructed that the State had "to prove every material allegation of the indictment" beyond a reasonable doubt; and the indictment was provided to the jury during its deliberations. Consequently, viewed in the context of the entire charge, it is clear that the jury was not misled by the trial court's instruction on solicitation of sodomy. See *Simmons*, 207 Ga. App. at 172.

*Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 8, 2005.

*Cynthia W. Harrison*, for appellant.
*Paul L. Howard, Jr., District Attorney, Alvera A. Wheeler, Assistant District Attorney*, for appellee.