A09A2004. KELLEY v. THE STATE.
(686 SE2d 810)

MIKELL, Judge.

Following a jury trial, Mark Brian Kelley was convicted of enticing a child for indecent purposes and solicitation of sodomy.[1] On appeal, Kelley raises two enumerations of error. He challenges the

---

[1] Kelley was also charged with child molestation, but the state elected not to proceed on that offense.

sufficiency of the evidence as to his conviction for enticing a child for indecent purposes and argues, alternatively, that the conviction should be reversed because the trial court failed to charge the jury on asportation. For the reasons that follow, we affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence."[2] So viewed, the evidence shows that the victim, B. B., was 15 years old at the time of the incident and was friends with Kelley's daughter, H. K. B. B. recalled that she had visited H. K.'s house a couple of times and that Kelley had given her a ride home once.

On March 1, 2008, while B. B. was visiting another friend's home, she received some unusual text messages from H. K.'s phone.[3] The first message said "you're hot," and B. B. replied, "you're hot too," because she thought that H. K. was playing on the phone. B. B. testified that subsequent messages asked her to send naked pictures of herself and that she began to suspect that Kelley was sending the messages because of an inappropriate comment he had made to her in the past.[4]

Eventually, B. B. sent a text message asking if Kelley was using H. K.'s phone and he replied, "you caught me." According to B. B., Kelley then asked that she send a naked picture of herself again, and she responded, "dude, you're like 40." Kelley continued to send text messages, asking B. B. to have sex, offering her money to do so, and indicating his desire to perform oral sex on her. B. B. showed the messages to the friend with whom she was staying and her friend's mother, Lou Ann Aylor, who called the police. While waiting for the police to arrive, B. B. emailed the messages to Aylor so that they could print them, and B. B. could erase them from her phone. Officer Carrie Ann Silvers of the Floyd County Police Department arrived before B. B. erased the text messages and saw them on B. B.'s phone. On the next day, Kelley continued to send text messages, suggesting that B. B. tell Aylor that she was going to church with H. K. so that he could pick her up and take her to his house to have sex. Aylor printed all of the messages, which were admitted into evidence.

Investigator Gary Conway met with B. B. and Aylor about the incident at the police department on March 2, 2008. Conway set up

---

[2] (Citation omitted.) *Finnan v. State*, 291 Ga. App. 486 (662 SE2d 269) (2008).

[3] B. B. testified that she and H. K. both had cell phones and often sent each other text messages.

[4] B. B. recalled that once when she was at H. K.'s house, they were playing in water outside when Kelley used the water hose to spray B. B.'s private parts and said, "wait until I get ahold of it." B. B. testified that she decided to ignore the comment and did not tell anyone about it because Kelley was her best friend's father.

a sting operation to apprehend Kelley. Conway told B. B. to call Kelley and not to mention anything about sex, because Kelley needed to initiate that conversation. The recording of the telephone call between B. B. and Kelley was played for the jury. During the call, Kelley told B. B. that he wanted to make love to her, would pay her $50, agreed to provide marijuana for them to use, reassured her that she could not get pregnant because he had been "clipped," and arranged a time and place for them to meet. Police officers accompanied B. B. to the appointed place, and as soon as B. B. indicated that Kelley had arrived, he was arrested.

Investigator Mark Corbin arrested and searched Kelley, finding $50 on his person. Corbin testified that he read Kelley his *Miranda* rights, that Kelley waived his rights, and that he made a statement. Kelley's recorded statement was played for the jury, during which he admitted to sending the text messages to B. B. and to setting up a meeting with her, and stated that he intended to pick her up so that they could have sex.

Kelley testified in his own defense. He stated that the text messaging began seven to ten days prior to his arrest; that he did not know the sender's identity; and that he would have stopped had he known the sender was a 15-year-old girl. Kelley explained that he thought the sender was older because of the content of the messages. Kelley testified that his statement was coerced after he was beaten by the police and that he did not recall signing the waiver of rights form although he admitted that his signature was on the form. On cross-examination, Kelley also admitted that he sent the text messages but repeatedly denied knowing B. B.'s age. Kelley also admitted that he had made a mistake and apologized to B. B.'s family and his own.

1. In his first enumerated error, Kelley argues that his conviction must be reversed because the state did not present evidence of asportation at trial. Specifically, Kelley argues that the state provided no evidence of a "taking" of B. B.; rather, the evidence showed that B. B. was not enticed but was acting on behalf of the police when she went to meet Kelley. We disagree.

Pursuant to OCGA § 16-6-5 (a), "[a] person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts." "In order to establish a violation of this statute, the state must show a joint operation of the act of enticing a child and the intention to commit acts of indecency or child molestation."[5] The offense also

---

[5] (Punctuation and footnote omitted.) *Moore v. State*, 291 Ga. App. 270, 271-272 (661 SE2d 868) (2008).

includes the element of "asportation," but asportation does not require proof of a physical taking.[6] Rather, the element of asportation is satisfied "whether the 'taking' involves physical force, enticement, or persuasion."[7] Here, the asportation element was satisfied by ample evidence of enticement; Kelley initiated contact with B. B., asked her to have sexual intercourse with him, offered her money to do so, and arranged a place to pick B. B. up so that they could have sex at his home.[8] Therefore, the state carried its burden of proof.

The fact that B. B. was a willing participant in a sting operation does not demand the reversal of Kelley's conviction.[9] The record is replete with evidence that Kelley solicited and enticed B. B. to meet him to have sex both before and after the police became involved in the case, which sufficiently established the necessary elements of the offense. Kelley did not deny sending the text messages or going to the meeting place for the purpose of picking up B. B. so that they could have sex. Accordingly, Kelley's challenge to the sufficiency of the evidence fails.

2. Alternatively, Kelley argues that his conviction must be reversed because the trial court failed to charge the jury on asportation. The record shows that the trial court charged the jury using the language of OCGA § 16-6-5 (a). It appears from the record that the trial court "waived" the requirement that Kelley submit a written request to charge on asportation. The trial court has the authority to waive the requirements of Uniform Superior Court Rule 10.3 regarding written requests to charge. But the trial court cannot relieve counsel for the defendant in a criminal case of his responsibility to preserve any alleged error for appeal. In the case at bar, counsel requested the court to give "a" charge on asportation.[10] Which charge on asportation? We must know precisely which words counsel wanted the court to say. Otherwise we cannot say whether the failure to say those words was erroneous.

The pattern jury charges suggested by the Council of Superior

---

[6] *Cimildoro v. State*, 259 Ga. 788, 789 (1) (387 SE2d 335) (1990). Accord *Carolina v. State*, 276 Ga. App. 298, 301 (1) (a) (623 SE2d 151) (2005).

[7] *Cimildoro*, supra. Accord *Carolina*, supra; *Moore*, supra at 272.

[8] See *Cimildoro*, supra (evidence that defendant lured victim to a place satisfied the "taking" element). Compare *Bragg v. State*, 217 Ga. App. 342-343 (1) (457 SE2d 262) (1995) (convictions reversed for lack of evidence as to how victims came to be in room where indecent conduct occurred); *Sanders v. State*, 145 Ga. App. 73, 74 (243 SE2d 274) (1978) (conviction reversed where victims, without invitation, met defendants and had sex but there was no evidence they were enticed, invited, or persuaded to meet defendants).

[9] See *Moore*, supra at 272, citing *Carolina*, supra at 301 (1) (a) (fact that victim voluntarily goes with a defendant does not foreclose a showing of asportation where defendant persuaded victim to accompany him).

[10] The transcript of the preliminary hearing was not included in the record, but the request for the charge was mentioned during the charge conference. The proposed written requests to charge were not included in the record.

Court Judges does not seem to contain a separate instruction about asportation. The word is mentioned only in the pattern jury charge for kidnapping, which says in part, "To prove abduction, the [s]tate must prove the element of asportation. Asportation means 'carrying away.' Only the slightest movement of the victim is required to constitute the necessary element of asportation."[11] If the court would have charged those words, the instruction would not be adjusted to the evidence, or to the indictment. The crimes alleged in the case do not include abduction. Furthermore, as discussed in Division 1, asportation, in connection with this offense, is satisfied by evidence of enticement, and a jury charge appropriately tailored to the facts of the instant case would have so stated. Therefore, we will not reverse Kelley's conviction on this basis.

If the defendant had orally specified precisely which words he wished spoken, the trial court's "waiver" would have been effective and the error would have been preserved for appeal. But counsel cannot expect a trial court to devise a jury instruction based on a nonspecific request for a charge on a particular principle of law. The trial judge might choose words with which counsel would have been displeased. Then there would be an enumeration of error about the words chosen. The present enumeration of error presents nothing for review.[12]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 13, 2009.

*Jared M. Campbell*, for appellant.
*Leigh E. Patterson, District Attorney, Kay A. Wetherington, Assistant District Attorney*, for appellee.

---

[11] See Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II, (4th ed. 2007), § 2.26.30, p. 8.

[12] *Watson v. State*, 261 Ga. App. 562, 564 (2) (a) (583 SE2d 228) (2003).