**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 27, 2012

# In the Court of Appeals of Georgia

A12A0745. WEEKS v. THE STATE.

BARNES, Presiding Judge.

A Cherokee County jury convicted Bernard William Weeks, Jr. of aggravated child molestation, and the trial court denied his motion for new trial. On appeal, Weeks contends that there was insufficient evidence to convict him because a fatal variance existed between the allegations in the indictment and the proof at trial; that the trial court erred in giving an overly broad jury charge on child molestation and an abbreviated charge on witness credibility; and that his trial counsel rendered ineffective assistance by requesting a jury charge on witness credibility that was legally inaccurate. For the reasons discussed below, we affirm.

On appeal after a criminal conviction, we construe the evidence in the light most favorable to the jury's verdict, and the defendant is no longer presumed

innocent. *Boring v. State*, 303 Ga. App. 576, 577 (1) (694 SE2d 157) (2010). So viewed, the evidence showed that Weeks lived in a trailer in Cherokee County with his wife and two stepchildren. On December 15, 2007, Weeks's stepdaughter, L. H., left a note in the trailer for her mother in which she disclosed that Weeks "always make me suck his private parts." L. H. was 11 years old at the time. When the mother found the note from L. H., she called 911. A police investigation ensued, culminating in the arrest and indictment of Weeks on the charge of aggravated child molestation.

At the subsequent jury trial, the State introduced into evidence the December 15 note from L. H. to her mother alleging that Weeks was abusing her sexually. L. H. confirmed that she wrote the note and testified that Weeks would call her into his bedroom and then force her to "suck" on his "private part" while "mov[ing] [her] head up and down." According to L. H., the sexual abuse occurred over a period of time and would take place when her mother was at work or in the shower and her brother was in his room or outside. L. H. further testified that "white stuff" sometimes would come out of Week's private part, and she described the area around his private part as being hairless.

2

During L. H.'s direct examination, the State also introduced an anatomical drawing of a male figure used during her prior forensic interview. When asked during the interview to circle the area on the male figure that represented Weeks's "private part," L. H. had circled the front genital area.

L. H.'s brother testified that sometimes L. H. and Weeks would be in the trailer alone together. According to the brother, sometimes Weeks would tell him he could go outside to play and then would lock him out of the trailer while Weeks remained inside with L. H.

Weeks did not testify. However, he gave a videotaped statement to the investigating detective, and the State played the statement to the jury, subject to certain redactions agreed upon by both parties. While Weeks denied to the detective that he had sexually abused L. H., he confirmed that he shaved his front genital area and locked L. H.'s brother out of the trailer on occasion.

After hearing all of the testimony, the jury convicted Weeks of the charged offense. Weeks moved for a new trial, asserting, among other errors, that his trial counsel rendered ineffective assistance. Following a hearing, the trial court denied the motion, leading to this appeal.

1. A person commits child molestation by doing "any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a) (1).[1] The crime is elevated to aggravated child molestation when the "person commits an offense of child molestation which act physically injures the child or involves an act of sodomy." OCGA § 16-6-4 (c). Sodomy is "any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a) (1).

The indictment charged Weeks with aggravated child molestation in that he "did unlawfully then and there perform an immoral and indecent act of sodomy to a child under the age of 16 years, to wit: [L. H.], with the intent to arouse and satisfy

---

[1] In 2007, when the alleged sexual abuse occurred in this case, OCGA § 16-6-4 (a) did not have separately delineated subparagraphs (a) (1) and (a) (2). See OCGA § 16-6-4 (a) (2007). OCGA § 16-6-4 subsequently was amended, effective May 5, 2009, and the new subparagraph designations were added. Ga. L. 2009, Act 149, § 1. OCGA § 16-6-4 (a) remained substantively the same and became OCGA § 16-6-4 (a) (1). Ga. L. 2009, Act 149, § 1. See OCGA § 16-6-4 (a) (1) (2011). A new subparagraph (a) (2) was added to the statute, which provides that child molestation also is committed when a person "[b]y means of an electronic device, transmits images of a person engaging in, inducing, or otherwise participating in any immoral or indecent act to a child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." Ga. L. 2009, Act 149, § 1. See OCGA § 16-6-4 (a) (2) (2011).

the sexual desires of the accused and of the said child, contrary to the laws of this State, the good order, peace and dignity thereof." The indictment did not specify what particular body parts or acts of sodomy constituted the charged offense.[2]

According to Weeks, the indictment, by averring that he did unlawfully *perform* an immoral or indecent act of sodomy *to* the victim, required evidence of an act involving his mouth and the victim's sex organ. Because there was no evidence of such an act introduced in this case, Weeks maintains that there was a fatal variance between the allegations in the indictment and the proof at trial, and thus insufficient evidence to support his conviction of aggravated child molestation. We disagree.

As an initial matter, Weeks failed to raise the fatal variance issue in the trial court. Consequently, he has waived the issue for consideration on appeal. See *Hanson v. State*, 305 Ga. App. 900, 902 (2) (700 SE2d 896) (2010); *Palmer v. State*, 286 Ga. App. 751, 753-754 (2) (650 SE2d 255) (2007).

---

[2] While the indictment could have been drafted using more specific language, Weeks did not pursue a special demurrer as to the form of the indictment and thus has waived any argument in that regard on appeal. See *Flournoy v. State*, 299 Ga. App. 377, 380-381 (2) (682 SE2d 632) (2009).

In any event, "Georgia courts no longer employ an overly technical application of the fatal variance rule, focusing instead on materiality." (Citation and punctuation omitted.) *Haley v. State*, 289 Ga. 515, 529 (3) (a) (712 SE2d 838) (2011).

> The true inquiry . . . is not whether there has been a variance in proof, but whether there has been such a variance as to affect the substantial rights of the accused. It is the underlying reasons for the rule which must be served: 1) the allegations must definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise, and 2) the allegations must be adequate to protect the accused against another prosecution for the same offense. Only if the allegations fail to meet these tests is the variance fatal.

(Citation omitted.) *Roscoe v. State*, 288 Ga. 775, 776 (3) (707 SE2d 90) (2011).

Applying these tests to the case-at-hand, we conclude that there was no fatal variance. As noted above, the indictment did not spell out what particular body parts or acts of sodomy constituted the charged offense, and thus the indictment could reasonably be construed as encompassing an act of oral sodomy either involving Weeks's mouth and L. H.'s sex organ, or involving L. H.'s mouth and Week's sex organ.[3] Moreover, the allegation in the indictment that Weeks did "perform an

---

[3] Compare *Ross v. State*, 195 Ga. App. 624, 624-625 (1) (b) (394 SE2d 418) (1990) (fatal variance occurred, where the indictment averred that the accused committed aggravated sodomy "in one manner and in one manner only, that is, 'by

6

immoral and indecent act of sodomy to a child" did not necessarily require that the act involve Weeks's mouth and the victim's sexual organ. As the State points out in its brief, a man who places his penis in the mouth of a child reasonably can be said to "perform" an act of sodomy "to" that child.

In arguing for a more narrow definition of the word "perform," Weeks relies upon *Turner v. State*, 231 Ga. App. 747, 748-749 (1) (500 SE2d 628) (1998), and *Carolina v. State*, 276 Ga. App. 298, 304-305 (5) (b) (623 SE2d 151) (2005). Based upon these two cases, Weeks asserts that if the word "perform" is used in an indictment in a case involving oral sodomy, it necessarily follows that the person doing the "performing" is the one using his or her mouth. We are unpersuaded because both cases are plainly distinguishable.

Neither *Turner* nor *Carolina* involved charges of aggravated child molestation. Moreover, in *Turner* the indictment and jury charge used both the words "perform"

---

putting his mouth to the sex organ of the alleged victim,'" but the evidence at trial showed that the accused forced the victim "to perform oral sex upon him, and that he thereafter committed an act of anal intercourse upon her") (punctuation omitted); *Legg v. State*, 207 Ga. App. 399, 401 (4) (428 SE2d 87) (1993) (fatal variance occurred, where the indictment averred that the accused committed aggravated sodomy and sodomy "in one manner and in one manner only, that is, 'an act involving the sex organs of the accused and the mouth of the victim,'" but the evidence at trial showed only "two acts involving the mouth of the accused and the sex organs of the victim") (punctuation omitted).

and "submit" in describing the prohibited act of oral sodomy, and in *Carolina* the jury charge distinguished between "performing" and "submitting" to an act of sodomy. Clearly, if an indictment or jury charge uses both the words "perform" and "submit" in a case involving oral sodomy, then the person "performing" is the person whose mouth was involved in the act, and the person "submitting" is the person whose sexual organ was involved in the act. But we decline to interpret the word "perform" so narrowly where, as here, the indictment alleged aggravated child molestation, and neither the indictment nor the jury charge used both the words "perform" and "submit."

For these combined reasons, we conclude that the indictment was sufficient to put Weeks on notice that he could be convicted for an act of oral sodomy involving L. H.'s mouth and his sex organ. Nor does Weeks allege that the indictment misinformed or misled him in any manner that surprised him at trial or impaired his defense. Furthermore, given that the indictment was broad enough to encompass an act of oral sodomy involving either Weeks's mouth and L. H.'s sex organ, or L. H.'s mouth and Week's sex organ, there is no danger that Weeks could be prosecuted again for the same offense. Under these circumstances, there was no fatal variance

between the allegations and proof at trial, and, therefore, there was sufficient evidence to sustain Weeks's conviction of aggravated child molestation.

2. Weeks also argues that the trial court erred by giving an overly broad jury charge on the definition of child molestation. In this regard, he notes that the trial court charged the jury that "[a] person commits child molestation when that person does any immoral or indecent act to *or with* any child under the age of 16 years," while the indictment alleged only that he performed an immoral or indecent act *to* the child. (Emphasis supplied.) We discern no error by the trial court.

The trial court relied upon OCGA § 16-6-4 (a) (2007) in defining child molestation, and this court has repeatedly held that this statutory provision, now codified at OCGA § 16-6-4 (a) (1) (2011), "does not set forth alternate methods of committing child molestation." *Day v. State*, 193 Ga. App. 179, 180 (3) (387 SE2d 409) (1989). See *Edwards v. State*, 253 Ga. App. 479, 482-483 (4) (559 SE2d 506) (2002); *Buice v. State*, 239 Ga. App. 52, 59 (5) (520 SE2d 258) (1999), aff'd on other grounds, 272 Ga. 323 (528 SE2d 788) (2000). Thus, under the child molestation statute, an act committed "to" or "with" a child is a distinction without a difference.

In any event, the prosecutor read the indictment to the jury during closing argument; the trial court charged the jury to return a guilty verdict only "[i]f, after

9

considering the testimony and evidence presented to you together with the charge of the Court[,] you should find and believe beyond a reasonable doubt that the Defendant in Cherokee County, Georgia did commit the offense *alleged in this indictment*"; and the jury was provided a copy of the indictment to review during its deliberations. (Emphasis supplied.) Because the elements of the crime thus were properly limited to those charged in the indictment, the trial court committed no error in its charge to the jury. See *Edwards*, 253 Ga. App. at 483 (4); *Buice*, 239 Ga. App. at 59 (5); *Day*, 193 Ga. App. at 180 (3).

3. Week further asserts that the trial court erred by giving an abbreviated charge on witness credibility. We do not agree.

The Suggested Pattern Jury Instructions on the credibility of witnesses provides as follows:

> You must determine the credibility or believability of the witnesses. It is for you to determine which witness or witnesses you believe or do not believe, if there are some whom you do not believe.

> In deciding credibility, you may consider all of the facts and circumstances of the case, the manner in which the witnesses testify, their interest or lack of interest in the case, their means and opportunity for knowing the facts about which they testify, the nature of the facts about which they testify, the probability or improbability of their

10

testimony, and the occurrences about which they testify. You may also consider their personal credibility insofar as it may have been shown in your presence and by the evidence.

(Punctuation and footnote omitted.) Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 1.31.10.

The record shows that Weeks submitted a written request to charge that listed the specific factors found in the second paragraph of the aforementioned pattern instruction, but that also erroneously stated that a jury could consider a witness's intelligence in deciding his or her credibility. See *McKenzie v. State*, 293 Ga. App. 350, 351-352 (2) (667 SE2d 142) (2008) (trial court erred in instructing the jurors that they were authorized to consider a witnesses's intelligence in determining his or her credibility, although error was not so harmful as to require reversal). Subsequently, in its charge to the jury on witness credibility, the trial court omitted the list of specific factors for deciding witness credibility.

Contrary to Weeks's assertion, the trial court committed no error by giving an abbreviated charge on witness credibility. A trial court does not err in omitting the list of specific factors for deciding witness credibility contained in the second paragraph of the pattern instruction, in the absence of a proper request for such a charge. See

11

*Damerow v. State*, 310 Ga. App. 530, 533 (2) (714 SE2d 82) (2011). See also *Giles v. State*, 113 Ga. App. 629 (149 SE2d 432) (1966); *Benton v. State*, 185 Ga. 254, 257 (6) (194 SE 166) (1937). Because Weeks did not submit a proper written request to charge on the specific factors that can be considered by the jury in deciding witness credibility, the trial court's omission of those factors was not erroneous. See id.

4. In a related enumeration of error, Weeks maintains that his trial counsel was constitutionally ineffective for failing to request a legally accurate charge on the specific factors that a jury can consider in deciding witness credibility, and that he is entitled to a new trial as a result. We are unpersuaded.

> The two-prong test for determining the validity of a claim of ineffectiveness of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency. If the defendant cannot satisfy either of the two prongs of the *Strickland* test, his ineffective assistance claim fails.

(Citation and punctuation omitted.) *Martinez v. State*, 303 Ga. App. 166, 171-172 (4) (692 SE2d 766) (2010).

12

Even if his trial counsel was deficient for failing to request a legally accurate charge on witness credibility, we conclude that Weeks cannot establish that the deficiency prejudiced him. In an effort to establish prejudice, Weeks argues that if he had requested a legally accurate charge, the trial court likely would have instructed the jury on the specific factors for determining witness credibility. According to Weeks, because a proper charge was not requested, the trial court gave its abbreviated charge on witness credibility, immediately followed by charges regarding impeachment of a witness and prior difficulties. The net effect of these charges, in Weeks's view, was that the members of the jury were erroneously led to believe that the only factors that they could consider in deciding the credibility of a witness were whether the witness had been impeached and whether the defendant had prior difficulties with the witness.

Weeks's argument is without merit. First, the transcript of the charge conference reflects that the trial court ultimately chose not to instruct the jury on a list of specific factors for deciding witness credibility because the court was concerned that providing the jury with a "laundry list" of a few factors would over-emphasize those particular factors in an inappropriate manner. Hence, the record shows that the trial court would have omitted a specific list of factors from its charge on witness

13

credibility, even if Weeks had made a proper request. Second, Weeks's assertion notwithstanding, there is nothing in the trial court's abbreviated charge on witness credibility that indicated that the jury was restricted to only considering impeachment and prior difficulties when deciding whether a witness was credible. Consequently, Weeks cannot demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different, but for his counsel's alleged deficiency in requesting a legally inaccurate jury charge on witness credibility.

*Judgment affirmed. Adams and McFadden, JJ., concur.*