## A01A1342. WILLIAMS v. THE STATE.
### (553 SE2d 823)

BARNES, Judge.

Emanuel Williams appeals his rape conviction, contending the trial court erred in ruling that Williams could not cross-examine the victim regarding a prior rape allegation. Because this evidence was inadmissible under the Rape Shield Statute, we affirm the conviction.

The victim testified that she talked to Williams and his co-defendant, Larry Simmons, over the phone while they were at her boyfriend A. B.'s house. She had never met them, but one of them used to date A. B.'s sister. The victim accepted the defendants' offer to come to her house and drive her back to A. B.'s, because she did not have a car and A. B. did not have money for her cab fare.

The defendants drove the victim down a dark dirt road to an abandoned trailer in the middle of the woods. Simmons broke the door to get in, and Williams pulled her from the car and carried her into the trailer. Once inside, Williams directed Simmons to hold the victim down while he pulled off her shorts, tore her underwear, and put his penis inside her. The victim testified she was crying and telling the defendants to stop, but at 100 pounds she was overpowered. When Williams finished, he and Simmons laughed and said "that's how they brother did it" or something to that effect. Simmons had sex with the victim. When he finished, he went outside. The victim stood in the corner crying while she tried to put her shorts back on, and Williams pushed her to the floor and had sex with her again. After he

[20] Id.

finished, both defendants left the victim in the unheated, unlit trailer with no transportation. She dressed and after 15 or 20 minutes made her way to the house of a stranger, who called the police for her. The police came and took her first to the station, then to the hospital, where she was examined. The DNA of sperm found in her vagina matched both defendants' DNA, according to a laboratory report that the parties stipulated into evidence. The victim testified she was in great pain for a week or two afterward.

Williams made a statement after his arrest, which a police investigator read into the record. Williams admitted having sex with the victim in an abandoned trailer, but claimed it was consensual. After the victim had voluntary sex with Simmons, Williams said he told her he did not have enough gas to take her back to her house, so he and Simmons left her there.

Simmons testified at trial, contending that the victim consented to have sex with him after she had sex with Williams. After they had intercourse, she declined to give him oral sex so he went outside and waited in the car. Williams came out of the trailer, said he did not have enough gas to take the victim home, and the two drove away.

During Williams' cross-examination of the victim, his counsel notified the court outside the jury's presence that he planned to ask her about a previous rape. The following exchange ensued:

> [DEFENSE COUNSEL]: In giving this statement to Mr. Arnett, the investigator who was hired by the defense, there was mention by [the victim] of a prior rape that had occurred to her. It was an unprosecuted rape, but it was a rape that had occurred nonetheless. It was my intention to go into that. I understand the idea of the rape shield statute in Georgia. But there are cases that, there is at least one case that has held that a rape of the victim in the past is not her prior sexual behavior; it is the prior sexual behavior of whoever it was that had committed it.
> THE COURT: What's the relevance of all that anyway?
> [DEFENSE COUNSEL]: It goes to the, this person and her lack of response throughout the hours that this went on. . . .
> THE COURT: No, no. I'm not going to let you get into any prior — in fact, we have done too much of it here. Questions have been asked about her relationship with her boyfriend. That shouldn't have come in. Okay? Nobody objected. It is purely a violation, total violation of the rape shield law. What you are asking to do is a total violation of the rape shield law. You can't ask that question about it.
> [DEFENSE COUNSEL]: May we discuss the case that held

that it is not, Your Honor?

THE COURT: No. I have already decided. . . . That's my decision. I was going by the statute and`what the clear meaning of the statute says. And that statute is violated if you go into that. Now, what the purpose that you are telling me that you are getting into has nothing to do with this case. I'm telling you don't go into that.

[DEFENSE COUNSEL]: Your Honor, does it not matter to the court that there was a case. . . .

THE COURT: Don't argue with me, [defense counsel]. I have made my ruling. Do you understand me? . . . And I will be glad to look at your case if you want to hand it up here. . . . I have read it before. I know what it says. And it doesn't give you a right to use it. Give it to me. I'll keep it up here and will look at it again. I realize it. People have tried to pull this before using that case.

After hearing from the State, the court held, "Okay. My ruling is that it's not relevant to these issues." Williams responded, "Yes, sir. Thank you, Your Honor."

On appeal, Williams asserts that, after asking him how the previous rape was relevant, the trial court did not allow him to respond fully but allowed the State to make a lengthy rebuttal. A review of the exchange quoted above, however, clearly reveals the purpose for which Williams wanted to cross-examine the victim about the prior rape, which was to discuss her "lack of response throughout the hours that this went on." While he further expounds upon his theory of admissibility to this court, he does not contend that his purpose was different from that indicated at trial. He wanted

to put the alleged victim's actions in context. Instead of arguing that [the victim] did not try to escape because she feared the possible consequences Appellant was seeking to argue the opposite, that, being a prior rape victim, [the victim] would have seized upon any and every opportunity open to her to avoid a second rape. While a jury might not have agreed, it is certainly relevant to this alleged rape and the victim's supposed conduct throughout the chain of events that evening. In short, in closing down this avenue of questioning, the court prevented the Appellant from properly explaining the context behind [the victim's] claimed conduct and her explanations for that conduct on the night in question.

Williams cites *Raines v. State*, 191 Ga. App. 743, 745 (2) (382 SE2d 738) (1989), and *Lemacks v. State*, 207 Ga. App. 160 (427 SE2d

536) (1993), for the proposition that admitting evidence of a prior rape does not violate the Rape Shield Statute, OCGA § 24-2-3, because evidence that a witness was the unwilling victim of a prior crime is no reflection on her past sexual behavior. We do not find *Raines* or *Lemacks* to be authority for the proposition Williams asserts. The victim in *Raines* was permitted to testify, over the defendant's objections, that she did not physically resist the defendant because she had been raped before and had been subsequently counseled not to resist. We held in *Lemacks* that the defendant should have been allowed to introduce evidence that the two child victims had been previously molested, because a physician testified that she saw physical evidence of penetration which could have occurred any time from just after their birth to a week before the examination.

We have further analyzed other circumstances in which evidence of prior molestations or rapes is admissible. For example, evidence of prior false rape allegations may be admissible if the trial court determines at a hearing that the defendant established a reasonable probability of falsity. *Humphrey v. State*, 207 Ga. App. 472, 475-476 (2) (428 SE2d 362) (1993). Evidence of prior unrelated molestations may be admissible to establish other possible causes for behavioral symptoms described as "child sexual abuse accommodation syndrome." *Hall v. State*, 196 Ga. App. 523, 525 (2) (396 SE2d 271) (1990). Such evidence is not admissible, however, to show the victim's reputation for nonchastity or preoccupation with sex, or to show that the victim was "confused." Id.; *Blackwell v. State*, 229 Ga. App. 452, 454 (2) (494 SE2d 269) (1997); *Proper v. State,* 208 Ga. App. 471, 472 (1) (431 SE2d 133) (1993).

Finally, we have held that a defendant cannot introduce evidence that a victim actually consented to a previous sexual encounter she alleged was forcible in order to infer that the victim consented to the encounter at issue. *Postell v. State*, 200 Ga. App. 208, 213 (4) (c) (407 SE2d 412) (1991), rev'd on other grounds, 261 Ga. 842 (412 SE2d 831) (1992).

> This is precisely the kind of evidence the rape shield statute was designed to exclude, and the trial court properly excluded it. If [the defendant] sought introduction of this evidence simply to show the victim had been previously raped, we fail to see how this could have benefited his defense, so even as proper evidence, unrelated to the victim's prior sexual conduct, its exclusion was harmless.

*Postell v. State*, supra, 200 Ga. App. at 213. In affirming this portion

of the opinion, the Supreme Court of Georgia held:

> The trial court did not err by excluding evidence regarding the victim's claim that she was raped previously by another man. There is no evidence that the victim accused any individual in connection with this claim. Therefore, the rule in *Smith v. State*, 259 Ga. 135, 137 (377 SE2d 158) (1989), authorizing evidence of prior false accusations of rape in a rape trial, does not apply, and the evidence was not otherwise admissible.

*Postell v. State*, supra, 261 Ga. at 843.

We similarly find that the evidence of this victim's prior rape was not admissible as a prior false allegation or otherwise. The inference Williams wanted to argue, that the victim must have consented in this case because as a previous rape victim she would have exhibited more wariness of strange men, is not permissible under the statute. Williams was not foreclosed from fully exploring the issue of consent during his cross-examination of the victim and, therefore, had a mechanism for pursuing this defense aside from the introduction of the victim's prior rape. *Proper v. State,* supra, 208 Ga. App. at 472. We find no abuse in the trial court's discretion in disallowing the evidence of the victim's prior rape because it was not relevant. *Brown v. State*, 214 Ga. App. 676, 678 (2) (448 SE2d 723) (1994).

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED AUGUST 8, 2001.

*Mike L. Randolph*, for appellant.

*Howard Z. Simms, District Attorney, Graham A. Thorpe, Dorothy A. Vinson, Assistant District Attorneys*, for appellee.