**SECOND DIVISION
MILLER, P. J.,
MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 5, 2020**

# In the Court of Appeals of Georgia

A20A0791. BASS v. THE STATE.

MILLER, Presiding Judge.

A Fulton County jury convicted Christopher Bass of two counts of aggravated sodomy, ten counts of possession of a firearm during the commission of a felony, three counts of armed robbery, three counts of aggravated assault with intent to rob, two counts of rape, two counts of aggravated assault with intent to rape, two counts of aggravated assault, and one count of aggravated battery. Bass appeals from his convictions arguing that (1) the evidence was insufficient to support his convictions; and (2) the trial court erred by excluding evidence from trial pursuant to the rape shield statute. We conclude that the evidence was sufficient to sustain Bass' convictions and that the trial court did not err by excluding evidence under the rape shield statute. We therefore affirm.

Viewed in the light most favorable to the verdicts,[1] the evidence adduced at trial shows that on one day in 2008 or 2009, Lisa Johnson was standing outside of the Intown Suites when a dark-colored car pulled up to her. After she got into the car, the driver, whom she later identified as Bass, told her that he had $70 and he proceeded to drive to the back of a nearby building. After reaching the rear of the building, Bass pulled out a gun from the driver's side door, put the gun to her head and said, "do everything I tell you to do and I won't kill you." Bass then told her to take off her clothing and jewelry and to place her cell phone and any money she had in the center console, and he then told her to stand outside of the car. After exiting the vehicle, Johnson ran away, but Bass caught up to her and brought her back by the building. Bass then made her get down on her knees, forced her to perform oral sex, and then hit her in the face during the act. Bass then stood her up, bent her over the hood of the car, vaginally penetrated her, ejaculated in her mouth, and fled the area. A passing car picked up Johnson and took her back to the Intown Suites. Johnson later identified Bass from a photo line-up with the police and also identified him during the trial.

Kiya Dossie testified that she went to a party on the evening of May 31, 2009. Dossie left the party after an argument with a man and began walking home. While

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2

walking along a roadway, Bass pulled up to her and offered her a ride home. After she got into the car, Bass drove to a parking lot behind an automotive store and pulled out a gun. Dossie and Bass scuffled inside the car before he pulled her out of the car to a nearby flight of stairs and hit her in her head. At the stairs, Bass tried to force her to perform oral sex while holding the gun in his hand. According to Dossie, Bass' penis touched her lips but did not enter her mouth. Dossie acknowledged, however, that she wrote a statement on her photographic line-up with the police that Bass forced her to perform oral sex. Bass then took Dossie's clothing, her cell phone, and her purse which contained $120 and fled from the area. Dossie later identified Bass from a photo line-up with the police and also identified him at trial.

Adrenna Ware testified that on February 21, 2009, she was at the Fulton Inn and observed a red car with tinted windows and that its driver, whom she later identified as Bass, was trying to get her attention to speak with her. Bass spoke with her and told her "what he wanted," and they negotiated a price for sex. After agreeing on a price, Bass entered her hotel room and asked to use the bathroom. After using the bathroom, Bass walked up to her with a gun and told her that he would kill her if she moved. Bass pushed the gun towards her, told her to lie on her stomach in the bed, and proceeded to "rape" her. Bass then told her that he would kill her if she

3

moved. Bass took her cigarettes, cell phone, and money and left her room. Ware identified Bass from a photographic line-up and also identified him during trial.

Bass was indicted on two counts of aggravated sodomy (OCGA § 16-6-2), ten counts of possession of a firearm during the commission of a felony (OCGA § 16-11-106), three counts of armed robbery (OCGA § 16-8-41), two counts of rape (OCGA § 16-6-1), three counts of aggravated assault with intent to rob (OCGA § 16-5-21), two counts of aggravated assault with intent to rape (OCGA § 16-5-21), two counts of aggravated assault (OCGA § 16-5-21), and one count of aggravated battery (OCGA § 16-5-24). The jury convicted Bass of all counts. The trial court imposed a life sentence for Bass' aggravated sodomy and rape convictions, four concurrent 20-year sentences for his aggravated battery, armed robbery and aggravated assault convictions, two consecutive life sentences for one rape conviction and one aggravated sodomy conviction, and a five-year consecutive sentence to his life sentence for each of his possession of a firearm during the commission of a felony

convictions.[2] Bass filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. First, Bass argues that the evidence was insufficient to sustain his convictions. Specifically, Bass argues that (1) the evidence was insufficient for the crimes involving Lisa Johnson because the State failed to prove that the crimes involving Lisa Johnson occurred on the date specified in the indictment; (2) the State failed to prove that he committed aggravated sodomy against Kiya Dossie because there was a fatal variance between the allegations in the indictment and the evidence presented at trial, and the State failed to prove that he committed armed robbery because it failed to prove that he used a weapon to effectuate the taking of her property; and (3) the State failed to prove that he raped Adrenna Ware and that he used a weapon to effectuate the taking of her property. We disagree with all of Bass' arguments and conclude that the evidence was sufficient to sustain his convictions.

> On appeal from a criminal conviction, we view the evidence in the light
> most favorable to the verdict, with the defendant no longer enjoying a

---

[2] The trial court merged the three counts of aggravated assault with intent to rob into the armed robbery convictions, the two counts of aggravated assault with intent to rape into the rape convictions, and one count of aggravated assault and one count of possession of a firearm during the commission of a felony into the aggravated battery conviction.

presumption of innocence. We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.

(Citation omitted.) *Smith v. State*, 348 Ga. App. 643, 643-644 (824 SE2d 382) (2019).

### (a) Victim Johnson

As to Bass' argument that the evidence was insufficient to sustain his convictions involving Johnson because the State failed to prove that the offenses occurred within the range of dates listed in the indictment,

> [i]t is a longstanding principle of Georgia law that a date or range of dates alleged in an indictment, without more, is not a material allegation of the indictment, and, consequently, unless the indictment specifically states that the alleged dates are material, the State may prove that the alleged crime was committed on any date within the statute of limitation.

(Citations omitted.) *Thomas v. State*, 352 Ga. App. 640, 642 (1) (a) (835 SE2d 640) (2019). Rephrased, "except where the exact date of the offense is alleged to be an essential element thereof or where the accused raises an alibi defense, any variance between the date listed in the indictment and the date on which the crime is proven to have occurred is of no consequence." (Citation omitted.) *Picklesimer v. State*, 353 Ga. App. 718, 724-725 (3) (839 SE2d 214) (2020).

6

Here, the State alleged that Bass committed aggravated sodomy, possession of a firearm during the commission of a felony, armed robbery, aggravated assault with intent to rob, rape, aggravated assault with intent to rape, and aggravated assault against Johnson between November 1, 2008 and November 30, 2008. The dates were not alleged to be essential elements in the indictment, and Bass never raised an alibi defense at trial.[3] Because the dates of the incidents were not an essential element of the offenses, we reject Bass' argument that the evidence was insufficient to sustain his convictions on this basis. See *Picklesimer*, supra, 353 Ga. App. at 725 (4) (rejecting the defendant's argument that the evidence was insufficient to sustain his convictions where the dates alleged in the indictment were not essential elements in the indictment).

*(b) Victim Dossie*

Next, Bass argues that the evidence was insufficient to show that he committed aggravated sodomy and armed robbery against Kiya Dossie. Specifically, he argues that there was a fatal variance because the indictment alleged that he committed aggravated sodomy by placing his penis on and into Dossie's mouth, but the evidence

_____

[3] We also note that Bass does not argue in his brief that any of the crimes occurred outside of the statute of limitation.

7

at trial showed only that he placed his penis on Dossie's mouth. He also argues that he did not commit armed robbery against Dossie because the State failed to prove that he used a weapon to effectuate the taking of Dossie's property. These arguments are unavailing.

> Georgia law defines sodomy as any sexual act involving the sex organs of one person and the mouth or anus of another. A person commits the offense of aggravated sodomy when he or she commits sodomy with force and against the will of the other person or when he or she commits sodomy with a person who is less than ten years of age. Therefore, the crime of aggravated sodomy has three elements: (1) an act of sodomy; (2) with force; and (3) against the will of another.

(Citations and punctuation omitted.) *Handley v. State*, 352 Ga. App. 106, 107 (834 SE2d 114) (2019). Additionally, "when an indictment charges that a crime was committed in more than one permissible way — as in this case by the use of the conjunctive 'and' — proof at trial that the crime was committed in one of the ways expressed in the indictment is sufficient to sustain the conviction." *Carolina v. State*, 276 Ga. App. 298, 304 (5) (a) (623 SE2d 151) (2005).

We conclude that Bass has failed to show a fatal variance. Here, the State alleged that Bass committed aggravated sodomy in that he "did unlawfully and forcibly perform a sexual act involving the accused's male sex organ and the mouth

8

of Kiya Dossie against the will of said [Kiya] Dossie, by placing accused's male sex organ into and upon the mouth of said Kiya Dossie[.]" Dossie testified at trial that, although Bass' penis did not enter her mouth, his penis touched her lips. Therefore, because the evidence was sufficient to show that Bass committed aggravated sodomy in at least one of the ways alleged in the indictment, Bass' fatal variance argument fails. See *Carolina*, supra, 276 Ga. App. at 304 (5) (a) (rejecting the defendant's fatal variance argument where, although the indictment charged him with enticing a child for indecent purposes by "soliciting, enticing, *and* taking" the victim, the evidence presented at trial showed that the defendant committed the offense in at least one of the ways alleged in the indictment).

We also reject Bass' argument that the evidence was insufficient to show that he committed armed robbery against Dossie because the State failed to prove that he used a weapon to effectuate the taking of Dossie's property.

> Armed robbery occurs when the defendant, with intent to commit theft, takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon. This Court has held that the offensive weapon must be used as a concomitant to a taking which involves the use of actual force or intimidation (constructive force)

9

against another person which must either precede or be contemporaneous with, and not subsequent to, the taking.

(Citations and punctuation omitted.) *Attaway v. State*, 332 Ga. App. 375, 377 (1) (a) (772 SE2d 821) (2015).

Here, the State alleged that Bass committed armed robbery against Dossie in that he "did unlawfully, with the intent to commit theft, take from the person and immediate presence of Kiya Dossie U.S. currency, the property of Kiya Dossie, by use of a handgun, an offensive weapon[.]" Dossie testified that Bass pulled out a gun after arriving at the parking lot. After taking Dossie to a nearby stairwell, Bass took Dossie's clothing. After trying to force Dossie to perform oral sex, Bass took her clothing, her cell phone, and her purse and fled the area. Dossie testified that Bass held the gun in his hand during the entire incident. We conclude that this evidence was sufficient to show that Bass used a firearm to effectuate the taking of Dossie's property. See *Merritt v. State*, 353 Ga. App. 374, 376-377 (1) (837 SE2d 521) (2020) (holding that the evidence was sufficient to show that the defendant used a firearm to effectuate the taking of the victim's property as required to sustain an armed robbery conviction, where the evidence showed that the defendant took the victim's car after pointing a gun at her).

10

### (c) Victim Ware

As to Bass' argument that the evidence was insufficient to sustain his rape conviction involving Adrenna Ware, OCGA § 16-6-1 (a) provides: "A person commits the offense of rape when he has carnal knowledge of: (1) [a] female forcibly and against her will; or (2) [a] female who is less than ten years of age." "Carnal knowledge in rape occurs when there is any penetration of the female sex organ by the male sex organ." Id.

Here, Ware testified that after Bass used the restroom, he walked up to her with a gun and told her that he would kill her if she moved. She said that Bass pushed the gun towards her, told her to lie on her stomach in the bed, and proceeded to "rape" her. Ware also testified that she cried and told Bass "no." Although Bass argues that Ware's conclusory statement that he raped her was insufficient to prove the elements penetration, "we hold that in the context of the rest of her testimony the statement carried with it a rather strong implication that intercourse had in fact occurred." *Haney v. State*, 144 Ga. App. 885 (242 SE2d 757) (1978) (rejecting the defendant's argument that the evidence was insufficient to sustain his rape conviction based on the victim's testimony that he had "raped" her).

11

Bass' argument that the evidence failed to show that he used a weapon to effectuate the taking of Ware's property also fails. As previously stated, "[a]rmed robbery occurs when the defendant, with intent to commit theft, takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."(Citations and punctuation omitted.) *Attaway*, supra, 332 Ga. App. at 377 (1) (a).

Here, the State alleged that Bass committed armed robbery against Ware in that he "did unlawfully, with intent to commit theft, take from the person and immediate presence of Adrenna Ware United States currency, a cellular telephone, and cigarettes, . . . by use of a handgun, an offensive weapon[.]" Ware testified that Bass, while holding a firearm, told her that he would kill her if she moved and that he then proceeded to take her cigarettes, cell phone, and money. Therefore, based on this evidence, the jury was authorized to conclude that Bass took Ware's property after threatening her with the firearm.[4] See *Merritt*, supra, 353 Ga. App. at 376 (1).

---

[4] To the extent that Bass argues that the evidence was insufficient on the grounds that Ware willingly gave him the money, this argument also fails. Ware later testified that Bass took the money from her.

12

Accordingly, for the reasons provided above, we conclude that the evidence was sufficient to sustain Bass' convictions.

2. Next, Bass argues that the trial court erred by excluding evidence that Johnson had been raped by another man because the evidence did not violate the rape shield statute and because it was relevant to show that Johnson may have "conflated" the two incidents. We conclude that the trial court did not abuse its discretion by excluding this evidence from trial.

"[A]s a general rule, admission of evidence is a matter resting within the sound discretion of the trial court, and appellate courts will not disturb the exercise of that discretion absent evidence of its abuse." (Citation omitted.) *Pope v. State*, 266 Ga. App. 602, 603 (2) (597 SE2d 632) (2004).

Former OCGA § 24-2-3 (a),[5] which was in effect at the time of Bass' trial, states in part:

> In any prosecution for rape in violation of Code Section 16-6-1, relating to rape . . . evidence relating to the past sexual behavior of the complaining witness shall not be admissible, either as direct evidence or on cross-examination of the complaining witness or other witnesses,

---

[5] The provisions of OCGA § 24-2-3 have since been incorporated as OCGA § 24-4-12 as part of the enactment of Georgia's current Evidence Code. See Ga. L. 2011, Act 52, § 2.

except as provided in this Code section. For the purposes of this Code section, evidence of past sexual behavior includes, but is not limited to, evidence of the complaining witness's marital history, mode of dress, general reputation for promiscuity, nonchastity, or sexual mores contrary to the community standards.

OCGA § 24-2-3 generally did not "authorize the court to exclude evidence of a victim's past sexual conduct in rape cases, but instead act[ed] to curtail severely the discretion the trial court might otherwise have to allow essentially irrelevant and potentially prejudicial evidence of the victim's past sexual conduct to be admitted in such trials." *Bates v. State*, 216 Ga. App. 597 (454 SE2d 811) (1995). Under the statute, a trial court could, in its discretion, "apply the 'rape shield' principle even where the exclusion [was] not mandated under OCGA § 24-2-3." Id. Additionally, we have previously held that under OCGA § 24-2-3, evidence concerning a prior rape "is not admissible . . . to show the victim's reputation for nonchastity or preoccupation with sex, or to show that the victim was 'confused.'" (Citations omitted.) *Williams v. State*, 251 Ga. App. 137, 140 (553 SE2d 823) (2001), overruled on other grounds, *State v. Burns*, 306 Ga. 117 (829 SE2d 367) (2019).

Here, as Bass states in his brief, he sought to admit evidence that Johnson was raped by another man around the same time as the incident with Bass to show that she

14

may have conflated the two incidents. Specifically, Bass argued below that the police were investigating two serial rapists around the same time and in the same location as Johnson's rape. Because Bass sought to admit this evidence to show that Johnson may have confused the two incidents, the trial court did not abuse its discretion in excluding this evidence from trial. See *Williams*, supra, 251 Ga. App. at 140.

We also reject Bass' argument that the evidence was relevant. "Evidence is relevant if it logically tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant." (Citation omitted.) *Ross v. State*, 281 Ga. App. 891, 892 (1) (637 SE2d 491) (2006). At the hearing on the State's motion, Johnson consistently distinguished the two rapes, the vehicles involved, and most importantly, the identities of her attackers, and she never apparently expressed any confusion or conflated the two incidents.[6] In light of this testimony, we cannot say that the trial court abused its discretion in determining that this evidence was not relevant and from excluding it at trial.

---

[6] We further note that Bass did not, and does not, argue that Johnson's accusations of rape against the other man were false. Compare *Burns*, supra, 306 Ga. at 117 (noting that evidence that the complaining witness has made a prior false allegation of sexual misconduct is not of "scant" probative force).

15

Accordingly, for the aforementioned reasons, we affirm Bass' convictions and sentence.

*Judgment affirmed. Mercier and Coomer, JJ., concur.*