A05A0598. JOHNSON v. THE STATE.
(616 SE2d 848)

SMITH, Presiding Judge.

Following a jury trial, Aaron Johnson was convicted of two counts of aggravated child molestation and one count of child molestation. His motion for new trial was denied, and he appeals. Finding no reversible error, we affirm.

Construed in favor of the verdict, several witnesses testified concerning the nine-year-old victim's outcries of sexual abuse by her father. The victim acknowledged on direct examination that she and her father touched one another on their "private parts" and that he showed her "pictures or movies where people didn't have any clothes on." She stated that the people in the movies "would do what we were doing" and that those people "were touching each other's private parts and getting on each other and that's it." She testified that her father placed his mouth on her vagina and chest and that she placed her mouth on his penis.

1. Relying on *Roberson v. State,* 241 Ga. App. 226 (526 SE2d 428) (1999) (physical precedent only), Johnson argues that the court erred "when it allowed the state to improperly bolster its own witness by presenting evidence regarding the reliability of child hearsay statements as required by OCGA § 24-3-16 in the jury's presence after defense counsel had requested that any such evidence be offered outside the presence of the jury." During pretrial proceedings, Johnson sought to establish the reliability of the victim's out-of-court statements in a hearing outside the presence of the jury, and like the prosecution in *Roberson,* supra, the State here opposed the hearing. The court denied the motion. In its order denying Johnson's motion for new trial, the court concluded that the victim's

account of her ordeal on the witness stand during the trial demonstrated a precocious child who was thoughtful, focused, articulate and composed. The circumstances surrounding her initial outcry to the school counselor, a school social worker and to hospital personnel, all were established to have contributed to a finding that the child's spontaneous statements were reliable. There was no testimony or showing that the child's physical or emotional condition, her general credibility, would warrant a finding of unreliability or further inquiry into her credibility. There was no evidence that the child had been coached or threatened in any way.

The court found that the "record, in its totality," supported a finding that the victim's statements were reliable.

In *Roberson*, supra, as here, the trial court denied the defendant's request for a separate hearing to determine the reliability of the victim's testimony under OCGA § 24-3-16. Id. at 227. During direct examination of the victim's mother, the mother made a statement bearing on the victim's credibility. Asked if "she 'ever had any problem with [the victim] lying,' " the mother responded, " 'You know, normal things that children lie about.' " Id. The defendant's objection to this testimony was overruled. Id.

On appeal, the State in *Roberson* argued that testimony concerning the victim's truthfulness was "permissible under OCGA § 24-3-16." Id. at 227-228. We concluded that this argument was "plainly wrong," id. at 228, stating that OCGA § 24-3-16 "does not authorize the State to eviscerate the rule against improper bolstering." Id. We stated that although a hearing is not necessarily required to determine a child witness's credibility, "[p]ointed questions regarding a victim's credibility must be asked outside the presence of the jury if they violate well-established rules forbidding testimony that bolsters the credibility of the victim." (Citation and punctuation omitted.) Id. at 229.

Despite our determination that the State apparently attempted to elicit improper bolstering testimony, we affirmed the judgment of conviction, on the ground that the witness's "answers were not directly responsive" and "[a]t most . . . only implied or suggested that the victim would be truthful with respect to her allegations against" the defendant. *Roberson*, supra at 229. We also concluded that it was "highly probable that the mother's ambiguous testimony did not contribute to the jury's verdict." (Citation omitted.) Id.

We first note that *Roberson* is not binding precedent, as one member of the three-judge panel concurred in the judgment only.

Court of Appeals Rule 33 (a). In addition, even if *Roberson* constituted binding authority, that case is not controlling and does not require reversal.

Johnson points out that during cross-examination of Harriet Davis, the psychotherapist and forensic specialist who conducted the videotaped interview of the victim, defense counsel asked, "[D]uring your interview, some things came up that you presumed were the truth from the child; correct?" Davis answered affirmatively. Defense counsel asked further if Davis remembered the victim "bringing up about love juice," and again, Davis responded in the affirmative. Counsel then asked, "You anticipated that that was true and that he said and used the term love juice; correct?" Davis answered, "I did." The following series of questions and answers then ensued:

> Q: [Y]ou were surprised later on when she corrected you and said no, he didn't use the word love juice, I used it, and an exclamation.
> A: Yeah, she did correct me on that.
> Q: And that surprised you, didn't it?
> A: No, I wouldn't say it surprised me. I've done this so many times that it's really hard to surprise me, unfortunately.
> Q: Okay. And then she said that he didn't say it was called love juice, I just found it out when I was looking at the internet.
> A: That's correct, yes.
> Q: And was that the first that you had learned that somehow, the internet was involved in this?
> A: Yes.
> Q: Okay. And you believe that when she said that she found out about that and it wasn't supposed to be for children, because I looked on the internet and I typed in naked children and then the screen comes up and says it's not right for children and stuff; right?
> A: That's correct.
> Q: And you believed that that was true when she said that to you?
> A: Yes, I did.

Johnson notes that under *Allison v. State*, 256 Ga. 851, 853 (5) (353 SE2d 805) (1987), "expert opinion testimony on issues properly decided by the jury should be admitted only where the conclusion of the expert is one which the jury would not ordinarily be able to draw for" itself. As argued by Johnson, evaluation of witness credibility is

not beyond the ken of jurors but instead is a matter "solely within the province of the jury and an expert witness may not testify as to the victim's truthfulness."

But Davis did not directly state that she believed the victim's allegations of sexual abuse, and she did not testify concerning the ultimate issue of whether the victim had, in fact, been sexually abused. She simply acknowledged that "some things came up" during the interview with the victim that she presumed to be true. In addition, her testimony concerning her belief about the victim's statements concerning "love juice" was ambiguous as to what she actually believed. Indeed, that testimony may have even cast doubt on the victim's credibility, because the victim had originally attributed that phrase to her father.

Like the mother's testimony in *Roberson,* supra, this witness's testimony was not a direct statement that she believed the victim was telling the truth with respect to her allegations of sexual abuse. Also as we concluded in *Roberson,* we cannot conclude that a high probability exists that Davis's testimony contributed to the verdict. Id. at 229. The victim consistently recounted her allegations of abuse to other witnesses, and her videotaped interview was played for the jury. Also, "[t]he victim testified at trial, and [Johnson] had the opportunity to test her memory and credibility before the jury." Id. Although it may have been better practice to have conducted a hearing outside the jury's presence to determine the reliability of the victim's out-of-court statements, we cannot conclude that Johnson was harmed by Davis's testimony. Reversal is not required on this ground.

2. Relying in large part on the testimony elicited by defense counsel from Davis, discussed above, Johnson contends that he was denied effective assistance of counsel. To prevail on this claim under the standard of *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), Johnson must show that trial counsel's performance was deficient and that but for this deficiency, the outcome of his trial would have been different. *Johnson v. State,* 257 Ga. App. 30, 31 (570 SE2d 344) (2002). A strong presumption exists "that trial counsel's assistance was adequate and that counsel's decisions were made within the bounds of reasonable professional judgment." (Citations, punctuation and footnote omitted.) Id. In the absence of evidence to the contrary, appellate courts presume counsel's actions to have been strategic, *Holmes v. State,* 273 Ga. 644, 648 (5) (c) (543 SE2d 688) (2001), and therefore not deficient. Johnson's trial counsel did not testify during the hearing on his motion for new trial. We therefore presume that counsel made a strategic decision to elicit certain testimony from Davis. Furthermore, as discussed in Division 1, we cannot agree that Johnson was harmed by Davis's testimony.

Johnson has failed to meet his burden of proving both deficiency and harm, as required by *Strickland,* supra, and reversal is not warranted.

3. Johnson argues that the trial court erred in allowing the State to introduce "adult videos which did not depict any activity with children" and which were irrelevant to the issues being tried. Johnson correctly points out the explicit rule set out in *Simpson v. State,* 271 Ga. 772 (523 SE2d 320) (1999) that

> [i]n a prosecution for a sexual offense, evidence of sexual paraphernalia found in defendant's possession is inadmissible unless it shows defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity. Under this rule, sexually explicit material cannot be introduced merely to show a defendant's interest in sexual activity. It can only be admitted if it can be linked to the crime charged.

Id. at 774 (1). See also *Frazier v. State,* 241 Ga. App. 125, 126 (1) (524 SE2d 768) (1998). But the videotapes in this case were not admitted simply to show Johnson's "interest in sexual activity." *Simpson,* supra at 774 (1). The victim testified that she and Johnson watched pornographic movies and that the acts they performed were similar to those performed on the movies. Consequently, in contrast to the facts of *Simpson* and *Frazier,* the videos introduced into evidence in this case were "linked to the crime[s] charged." *Simpson,* supra at 774 (1). The trial court therefore did not err in admitting this evidence. See *Beck v. State,* 250 Ga. App. 654, 656-657 (2) (551 SE2d 68) (2001).

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED JUNE 28, 2005 — 

*Maurice Brown,* for appellant.

*Paul L. Howard, Jr., District Attorney, Karl D. Cooke, Jr., Anne E. Green, Assistant District Attorneys,* for appellee.