**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and DAVIS, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 27, 2025**

# In the Court of Appeals of Georgia

A25A0236. COLLUM v. THE STATE.

BROWN, Judge.

Following a jury trial, Jimmy Collum was convicted of four counts of aggravated child molestation, three counts of child molestation, and one count of enticing a child for indecent purposes. He appeals his convictions and the denial of his motion for new trial, contending that the trial court erred by allowing the State to introduce evidence of pornography found in Collum's possession and that his trial counsel rendered ineffective assistance for failing to object to State's witnesses commenting on the credibility of the victim. For the reasons explained below, we reverse Collum's convictions.

The evidence presented at Collum's trial showed the following.[1] Collum began dating the victim's mother when the victim was in third grade, and the victim and her mother eventually moved into Collum's mobile home. The victim testified that when she was 13 years old, Collum touched her vaginal area while the two were "play fight[ing]." According to the victim, things "escalat[ed]" from there. On multiple occasions while the victim's mom was out of the house, the victim testified that Collum had sexual intercourse with her and forced her to engage in oral sex. The victim testified that Collum touched her breasts and vagina with his hands, mouth, and penis, and that she touched his penis with her mouth. Collum also inserted a tube — packaging for a watch — into her vagina.

---

[1] Because this case requires a close assessment of whether the trial court's error was harmless, we review the evidence in detail and weigh it as reasonable jurors would have, instead of viewing the evidence in the light most favorable to the verdicts. See *Wallace v. State*, 320 Ga. 272, 273 (1), n.2 (907 SE2d 657) (2024). See also *Burns v. State*, 342 Ga. App. 379, 384 (1) (803 SE2d 79) (2017) ("we weigh the evidence as we would expect reasonable jurors to have done so, as opposed to assuming that they took the most pro-guilt possible view of every bit of evidence in the case") (citation and punctuation omitted).

The victim testified that on one occasion, Collum showed her a pornographic video while her mom was away from home for a sleep study.[2] The victim could not remember the name of the video but did recall that it had "something to do with girls getting, you know, F'd in the butt." The State then showed her State's Exhibit 1, a DVD, which the victim stated she recognized "as one of the DVDs." The victim recognized the pictures on the cover of the DVD from "[w]hen the DVD was taken out, the disk," and agreed that this was the pornographic movie Collum showed her. The DVD was admitted into evidence without objection and the cover was shown to the jury. According to the victim's trial testimony, this was the only time Collum showed her a pornographic DVD but that Collum had shown her photographs of naked women on his phone. The victim also testified that at some point Collum told her not to look in his bedroom closet "[b]ecause of the DVDs . . . in there."

The victim testified that she did not tell her mom because she knew they did not have any income and she worried about them not having a place to live, or her mom not getting her medication, if Collum went to jail. After the victim told a friend what

---

[2] The victim's mother testified that she twice spent the night away for sleep apnea tests in 2018 — once in February 2018 and once in May 2018 — and the victim stayed home alone with Collum.

was going on, the school counselor found out and spoke with the victim. The school counselor testified that the victim disclosed in September 2018, that her "stepfather" had been having sexual intercourse with her "for the last few months" and the counselor made a report with the Division of Family and Children Services ("DFCS") that same day. The victim made the same disclosure to the DFCS investigator that day.

A forensic interview was set up for the victim and DFCS contacted the police. A recording of the interview was played for the jury. During the interview, the victim referred to Collum as her stepfather and described several instances Collum had sexual intercourse with her. The interview echoed the victim's trial testimony, including that the first time something happened, Collum touched her vagina while the two were play wrestling; that Collum had touched her breast, put his penis in her mouth, and his mouth on her vagina; that she had not told anyone because she was afraid of what would happen to her and her mom; and that she had ultimately told the school counselor about Collum having intercourse with her. The victim also described one night that her mom was away for a sleep study and Collum had shown her pornographic videos before molesting her. The victim described two DVDs that

4

Collum had shown her; her description of one DVD matched the DVD recognized by the victim during her trial testimony and identified as State's Exhibit 1. The victim's description of the second DVD seems to match a pornographic DVD admitted into evidence as State's Exhibit 45. The victim drew a diagram of Collum's bedroom, indicating a closet where pornographic DVDs were kept and that Collum had told her not to look in the closet because there might be naked women. The victim did not mention seeing pornography on Collum's cell phone or any pornographic magazines. The victim indicated that the last time anything had happened was three weeks prior to the interview on a Tuesday, which fell on August 28, 2018. The victim's school attendance records reflected that the victim was checked out at 2:16 p.m. on August 28, 2018, with a comment of "[u]nexcused."

The State presented testimony from a detective who performed a forensic search of Collum's cell phone. The cell phone's web history showed the user visiting a pornographic website throughout the day on August 28, 2018, and seemingly clicking on links or pages with titles such as "Teen tied and gagged then fucked on the table," "Petite teen suck and fuck a hard dick," "Pervcity sexy teen gets her asshole stretched," "Pervcity . . . teens next door anal threesome porn," "teens like it big,

bad grades good girl," and "Horny schoolgirls suck cock and get fucked." The detective was able to surmise that the phone user clicked on something, causing the pornographic website to "focus" on "small, petite, teenage stuff," later to focus on anal sex, and then again focus on "the teen section." The detective did not find any child pornography on the cell phone and explained that the "[t]een porn" category "depicts the fantasy" rather than showing actual underage girls.

The cell phone report also reflected that someone had searched for "pastel kawaii anime girl," "[a]nime porn," and "furry porn." During her testimony, the victim confirmed that she was interested in anime but denied searching for porn on Collum's phone. Additionally, the defense pointed out that the report showed that the victim had taken a "selfie" on Collum's phone during the time period some of the pornography was viewed. Both the victim and the victim's mother testified that Collum could not really read or write.

Following the forensic interview, the victim was referred for a forensic medical examination. The victim reported to the sexual assault nurse examiner that her stepfather "would hold me down and make me suck his penis[.]" She also reported that he penetrated her vagina with his penis, finger, and an object, specifically, "a

clear round container [her] watch came in for Christmas." She answered "yes, once" to the nurse asking about anal penetration. During her examination of the victim, the nurse noticed a rash in the victim's groin area and "a lot of vaginal secretions" but concluded it resulted from yeast. The rest of the victim's examination was normal.

Collum's defense focused on the victim's mental health issues, including that the victim suffered from depression, oppositional defiant disorder, disruptive mood regulation disorder, self-harming, and suicidal ideation. Collum contended that the victim had made up the allegations because of this and because of the victim's difficult relationship with her biological father — who was possibly verbally abusive towards the victim — which often triggered the victim's mental health crises. Collum presented the testimony of the administrative manager of Georgia Hope, a mental health and substance use outpatient facility where the victim was regularly seen throughout 2018. The victim did not report any sexual abuse.

Collum was charged with five counts of aggravated child molestation, six counts of child molestation, and one count of enticing a child for indecent purposes. The trial court directed a verdict in favor of Collum on one count of child molestation (Count 12). The jury found Collum not guilty of two counts of child molestation (Counts 2

and 6) and one count of aggravated child molestation (Count 1), but guilty on the remaining charges. The trial court denied Collum's motion for new trial, as amended. This appeal followed.

1. Collum contends that the trial court erred in admitting evidence of certain pornographic DVDs and magazines found in his closet. We agree.

(a) *The trial court's rulings.* During a search of Collum's home, police seized pornographic DVDs and magazines found in Collum's bedroom closet. Prior to trial, Collum filed a motion in limine to exclude all pornographic material not linked to the charged crimes,[3] contending the evidence was irrelevant and subject to exclusion under OCGA § 24-4-403. During a pretrial hearing, the State argued that the pornographic DVDs found in Collum's closet were connected to Count 6, which alleged that Collum committed child molestation by showing the victim pornographic material. The trial court ruled that it would allow the evidence but noted that "some of this evidence might subject itself to objections at the time of trial[.]" With regard to the pornographic magazines found in Collum's closet, the State contended that "it corroborates [the victim's] statements," specifically the victim's statement that

---

[3] During the pretrial hearing, the defense stated that it was not seeking to exclude evidence of pornography found on Collum's cell phone.

Collum had warned her not to go in his closet because there were pictures of naked women. The defense argued that the magazines were unrelated to the crimes charged and that the victim had never mentioned any pornographic magazines. The trial court denied Collum's motion as to the DVDs but reserved ruling on the magazines. Before trial commenced, the trial court denied Collum's motion in limine in its entirety, ruling the State would be allowed to introduce evidence of all pornographic materials.

(b) *Trial testimony.* The detective who investigated the case testified that she obtained a search warrant for Collum's home and seized pornographic DVDs and magazines from Collum's bedroom closet. During the detective's testimony, the State introduced each of the DVDs and magazines one by one, with the detective reading out the titles and the State enlarging and projecting the cover images which showed men and women engaged in sexually explicit acts. The names read to the jury by the detective included the following: "Sorority Strip Off," "Nympho Teens, Teenage Fantasies," "The Hottest Young Puss, Teens," "Hose Hounds in Heat," "Lollypops, 100 percent Jack-Tested Teens," "Prime Chicks," "She Runs My Motor Clean," "Big Natural Tits," "Big Butts, Anal, White Girls . . . Ten Hours," "Snow Bottoms, Black Market," "Real Freaks of Nature, The World's Most

9

Shocking Cocks," and "Anal Pounding Volume 1 through 5." During this testimony, Collum launched a "continuing objection pursuant to my pretrial motion." On cross-examination, the detective confirmed that none of the pornographic materials seized was child pornography but asserted she had no way of knowing the age of the women in the materials. All of the pornographic materials were allowed to go back with the jury during deliberations.

(c) *The parties' arguments on appeal.* On appeal, Collum first argues that none of the pornographic material — apart from the DVD identified by the victim (State's Exhibit 1) — was relevant.[4] Even if any of the material was relevant, Collum argues that it should have been excluded under OCGA § 24-4-403. According to the State, it introduced this evidence "both to demonstrate that [Collum] had the materials for which he was accused of having used to entice the child in Count 6 and to corroborate the [victim's] report that [he] had shown her said material." Apart from being "central to the charge under Count 6," and thus admissible intrinsic evidence, the

---

[4] For this reason, and because Collum only moved to exclude pornographic evidence not connected to the charged crimes and did not object to the admission of State's Exhibit 1 or evidence of pornography found during the search of Collum's cell phone, our analysis only focuses on the remaining pornographic materials admitted during trial.

10

State argues that the evidence "would have been admissible because it served as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident pursuant to OCGA § 24-4-404 (b)," and further "showed [Collum's] lustful disposition toward the sexual activity with the victim child for which he was charged."

(d) *Relevant law.* Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. Generally, relevant evidence is admissible. See OCGA § 24-4-402. Relevant evidence may nevertheless be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." OCGA § 24-4-403 ("Rule 403"). This Court reviews a trial court's ruling on the admission of evidence for an abuse of discretion. *Gonzalez v. State*, 350 Ga. App. 297, 303 (3) (829 SE2d 385) (2019).

OCGA § 24-4-404 (b) ("Rule 404 (b)") governs the admission of extrinsic evidence and provides that "[e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith," but such evidence can be admitted for other, proper purposes,

11

"including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See *Roberts v. State*, 315 Ga. 229, 235 (2) (a) (880 SE2d 501) (2022). A party seeking to admit other-act evidence pursuant to Rule 404 (b)

> must show three things: (1) the evidence is relevant to an issue in the case other than the defendant's character; (2) the probative value of the evidence is not substantially outweighed by its undue prejudice; and (3) there is sufficient proof for a jury to find by a preponderance of the evidence that the defendant committed the other act.

*Kirby v. State*, 304 Ga. 472, 479 (4) (819 SE2d 468) (2018). Generally, "the admission of the defendant's possession of sexual photos, videos, or other paraphernalia . . . is . . . governed by [Rule 404 (b)]." Paul S. Milich, Ga. Rules of Evidence, § 11:26.

However, the limitations and prohibitions of Rule 404 (b) do not apply to intrinsic evidence. See *Roberts*, 315 Ga. at 235 (2) (a). This includes Rule 404 (b)'s notice requirement. See *Brown v. State*, 350 Ga. App. 104, 111 (2) (b) (828 SE2d 110) (2019) ("Because the other[-]acts evidence was properly admitted as intrinsic to the charged crime, it is not subject to the notice requirements of Rule 404 (b)."). "Evidence is admissible as intrinsic evidence when it is (1) an uncharged offense

arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense." (Citation and punctuation omitted.) *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017). In applying this language, our Supreme Court has also stated that

> evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.

(Citation and punctuation omitted.) *Roberts*, 315 Ga. at 236 (2) (a). "The line between 'extrinsic' and 'intrinsic' evidence is not always bright, but the basic distinction is whether the evidence may be understood as direct evidence of the charged crime or only evidence of other crimes subject to Rule 404 (b)." (Citation, punctuation, and emphasis omitted.) *Callaway v. State*, 321 Ga. 186, 191 (3) (913 SE2d 595) (2025). Both intrinsic and extrinsic evidence must satisfy Rule 403, which, again, provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." See *Harris v. State*, 310 Ga. 372, 377 (2) (b) (850 SE2d 77) (2020); *Kirby*, 304 Ga. at 479 (4).

(e) *Admissibility as intrinsic evidence.* We begin with the State's contention — and the trial court's conclusion — that all of the pornographic materials were admissible intrinsic evidence linked to Count 6 of the indictment, which charged Collum with child molestation based on Collum "showing [the victim] pornographic material[.]" Based on the victim's trial testimony as well as her forensic interview, the victim described one occasion during which Collum showed her one to two pornographic DVDs. During her forensic interview, the victim described Collum showing her two DVDs consistent with those admitted as State's Exhibits 1 and 45. We agree that State's Exhibits 1 and 45 were direct evidence of the offense charged in Count 6 and admissible in connection with the charged crimes. See *Rider v. State*, 366 Ga. App. 260, 267 (3) (b) (883 SE2d 374) (2022); *Johnson v. State*, 274 Ga. App. 69, 73 (3) (616 SE2d 848) (2005), disapproved on other grounds, *Miller v. State*, 285 Ga. 285, 287, n.1 (676 SE2d 173) (2009).[5]

---

[5] While *Johnson* was decided prior to the adoption of our current Evidence Code, the proposition that pornography shown to the victim is admissible still stands.

With regard to the remaining materials, there was no allegation or evidence that Collum showed the victim any of the other DVDs, that he showed the victim pornographic DVDs on another occasion, or that he ever showed her a pornographic magazine. Accordingly, we fail to see how this is direct evidence of the charged offense in Count 6. Further, Collum's possession of legal pornography was not "an uncharged offense arising from the same transaction or series of transactions as the charged offense[s]." (Citations and punctuation omitted.) *Williams*, 302 Ga. at 485 (IV) (d). Nor was it "*necessary* to complete the story of the crime." (Citation and punctuation omitted; emphasis supplied.) Id. Assuming without deciding that the remaining pornographic DVDs and magazines were intrinsic to the charged crimes in that they formed "an integral and natural part of an account of the crime," or that the "teen-themed" pornography explained Collum's motive, the evidence nonetheless should have been excluded under Rule 403.

"Rule 403's term 'unfair prejudice' speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on an improper basis rather than on proof specific to the offense charged." (Citation and punctuation omitted.)

---

See Paul S. Milich, Ga. Rules of Evidence, § 11:26.

15

*Harris v. State*, 314 Ga. 238, 263 (3) (a) (875 SE2d 65) (2022). Here, the remaining pornographic DVDs and magazines were tangential to the account of the crime. With regard to the probative value of the evidence to show motive, we note that, the State's need to establish Collum's motive was minimal. "Motive is not an essential element of any crime, so the State need not prove it, but the State often wants to introduce evidence of motive because it can help prove that a defendant had the required criminal intent." *Harris v. State*, 321 Ga. 87, 97 (3) (e) (i) (913 SE2d 570) (2025). As discussed in detail, infra, Collum's intent was not a disputed element at trial as there was never any contention or implication that Collum had committed the acts accidentally or without any sexual intent. Compare *Harris*, 314 Ga at 272 (3) (e) (ii) (in analysis of evidence's probative value, noting the State's "real need" to establish the defendant's motive because proving that the defendant had a motive to kill his child was important for the State in seeking to prove that he acted intentionally and maliciously, the dispositive issue at trial). See also *Mattei v. State*, 307 Ga. 300, 303 (2) (b) (835 SE2d 623) (2019) (describing "motive" as "the reason that nudges the will and prods the mind to indulge the criminal intent") (citation omitted). In the absence of this evidence, Collum's motive in committing the acts alleged against the victim

would still be clear. Compare *Armstrong v. State*, 310 Ga. 598, 603 (2) (b) (852 SE2d 824) (2020) ("the prosecutorial need for the other acts evidence showing gang membership was high because, without it, it is unclear what motive [the defendant] would have had to shoot [the victim] in a crowded park merely because [the victim] was in a dispute with [some other person]") (citation and punctuation omitted). Moreover, the State put forth extensive evidence of the teen-themed pornography searched for and viewed on Collum's cell phone, showing Collum's apparent sexual interest in teen-aged females. Thus, the "teen-themed" DVDs would have had little probative value and would have been needlessly cumulative. See *Olds v. State*, 299 Ga. 65, 76 (2), n.15 (786 SE2d 633) (2016) ("If the evidence offered is cumulative of other evidence already admitted, its probative value is limited to the additional strength it gives the point already made.") (citation omitted).

Conversely, the risk of unfair prejudice was great given the nature of the material. The explicit and, in certain instances, very descriptive title of each magazine and DVD was read to the jury while pornographic images were enlarged for the jury to see. Cf. *Harris*, 314 Ga. at 278 (3) (e) (ii) (B) (2). Accordingly, even if the remaining

17

pornographic materials were admissible as intrinsic evidence, they should have been excluded under Rule 403.[6]

(f) *Admissibility under OCGA § 24-4-404 (b).* In turning to the evidence's admissibility under Rule 404 (b), we question the propriety of addressing this question for the first time on appeal. The State did not argue below that the pornographic materials were admissible under Rule 404 (b). Nor did it give the pretrial notice required under Rule 404 (b). See OCGA § 24-4-404 (b) ("The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial."). Likewise, the trial court did not address the admissibility of the evidence under this provision and thus no limiting instruction was given when this evidence was admitted at trial. To be clear, at no point below was the issue of the evidence's admissibility under Rule 404 (b) raised or addressed. And now, without any meaningful argument, the State asserts on

---

[6] "Sometimes motive evidence is closely linked to the charged crimes in time and circumstances and constitutes intrinsic evidence; other motive evidence, such as acts committed further in time from the charged crimes, may be admitted as extrinsic acts under Rule 404 (b)." *Harris*, 314 Ga. at 266. Given our conclusion, we will not analyze the admissibility of the evidence under Rule 404 (b) for the purpose of showing motive.

18

appeal that the pornographic materials were admissible for every purpose listed in Rule 404 (b), including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, and summarily states that the probative value was not substantially outweighed by the evidence's undue prejudice.

Although we are hesitant to take up the issue for the first time on appeal and could perhaps decline to do so given our precedent,[7] we nonetheless will address the admissibility of the evidence under Rule 404 (b) as the issue is likely to arise on retrial of this case. We turn first to whether evidence of the remaining pornographic DVDs and magazines was relevant to an issue in the case other than Collum's character.

(i) Under the circumstances of this case, we fail to see how evidence of the pornographic DVDs and magazines was admissible to show identity, see *Green v. State*, 352 Ga. App. 284, 288 (2) (a) (834 SE2d 378) (2019), absence of mistake or accident, see id. at 288-289 (2) (b), knowledge, see id. at 289-290 (2) (c), opportunity, see *Sloan v. State*, 351 Ga. App. 199, 207 (2) (b) (830 SE2d 571) (2019), or plan or

---

[7] See *King v. State*, 346 Ga. App. 362, 368-369 (1) (816 SE2d 390) (2018) (declining to consider on appeal whether the defendant's prior conviction would have been admissible under Rule 404 (b) when at no point had the State sought to admit the prior conviction under this provision, and the trial court had not ruled on its admission under Rule 404 (b)).

preparation, see *Heard v. State*, 309 Ga. 76, 87 (3) (e) (844 SE2d 791) (2020).[8] This leaves intent.

Collum "put his intent at issue by pleading not guilty, and he did not take any affirmative steps to relieve the State of its burden to prove intent." *Jackson v. State*, 306 Ga. 69, 77 (2) (b) (i) (829 SE2d 142) (2019). The offenses of child molestation and aggravated child molestation required the State to prove that Collum committed an "immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." (Emphasis supplied.) OCGA § 16-6-4 (a) (1), (c). "The crime of enticing a child for indecent purposes in violation of OCGA § 16-6-5 requires the showing of a joint operation of the act of enticing a child and the intention to commit acts of indecency or child molestation." (Citation and punctuation omitted.) *Carolina v. State*, 276 Ga. App. 298, 301 (1) (a) (623 SE2d 151) (2005). See OCGA § 16-6-5 (a) ("A person commits the offense of enticing a child for indecent purposes when he or she solicits, entices, or takes any child under the age of 16 years to any place whatsoever for the purpose of child molestation or indecent acts.").

---

[8] This is not to say that such evidence could never be relevant to these purposes under different facts and circumstances.

The pornographic materials with a "teen theme" were relevant for the purpose of proving that Collum committed the charged acts to or with the 13-year-old victim with sexual intent as to the 13-year-old victim. Cf. *Holzheuser v. State*, 351 Ga. App. 286, 290-291 (1) (a) (ii) (828 SE2d 664) (2019) (evidence of websites that had been viewed on defendant's phone featuring "images of consistently young girls in their underwear or lingerie," defendant's Internet searches with the phrase "little girls," and some "representative images" taken from the websites were relevant to show defendant's sexual intent in exposing himself to a young girl as an element of child molestation) (punctuation omitted). However, the rest of the pornographic materials at issue — legal, adult pornography without any teen theme or association — lacked any relevance as to Collum's intent and were not admissible for that purpose.

Even if the teen-themed pornography was relevant to proving Collum's intent, the evidence must be excluded if its probative value was substantially outweighed by the danger of unfair prejudice under Rule 403. "The probative value of evidence is a combination of its logical force to prove a point and the need at trial for evidence on that point." (Citation and punctuation omitted.) *Harris*, 314 Ga. at 263 (3) (a). Usually, "[f]actors to be considered in determining the probative value of other[-]act

evidence offered to prove intent include its overall similarity to the charged crime, its temporal remoteness, and the prosecutorial need for it." (Citation and punctuation omitted.) *Hood v. State*, 309 Ga. 493, 501 (2) (847 SE2d 172) (2020). All of these factors are not well suited to the particular other-act evidence at issue here so we will focus our analysis on prosecutorial need. [9]

In assessing the probative value of other act-evidence offered to prove intent, the test as to prosecutorial need asks: "if the prosecution is not allowed to present this 404 (b) evidence . . . is there *any* danger that a rational jury could find that although he committed the objective, charged acts . . . he did not intend to do so or did not do so knowingly." (Emphasis in original.) Paul S. Milich, Courtroom Handbook on Ga. Evidence I8 (2025 ed.). See also *Wright v. State*, 362 Ga. App. 867, 881 (2) (b) (ii) (870 SE2d 484) (2022). "Thus, the prosecutorial need for other acts evidence of intent is minimal where it is unlikely, based upon the particular facts and circumstances of the case, that any rational jury could find that the perpetrator lacked criminal intent." (Citation and punctuation omitted.) Id. See also *Sloan*, 351 Ga. App. at 209-210 (2)

---

[9] We note that, at a general level, the pornographic materials are similar to the charged offenses in that they seemingly depict adult males involved in sexual acts with girls described as teen-aged.

(e) (i). Given the circumstances of this case, there is little to no danger that in the absence of the pornographic materials, a rational jury could find that although Collum committed the charged acts, i.e., placing his mouth on the victim's vaginal area, touching his penis on the victim's vaginal area, having the victim place her mouth on his penis, showing the victim pornographic material, touching the victim's breast with his hand, and touching the victim's vaginal area with his hand, he did not intend to do so or did not do so knowingly. Cf. *Wright*, 362 Ga. App. at 884 (2) (b) (iii) (A). Indeed, there was never any contention or implication that Collum had committed the acts without any sexual intent or accidentally. Collum's defense at trial was that none of the charged acts had occurred and that the victim had fabricated the allegations. The prosecutorial need for the pornographic evidence to show intent here therefore was minimal. See *Green*, 352 Ga. App. at 291 (2) (e) (i) (concluding that "the prosecutorial need for [other acts] evidence was negligible with regard to intent as no evidence was presented showing that the [charged criminal act] was unintentional and [the defendant] presented no such defense").

23

On the other side of the Rule 403 balance, the danger of unfair prejudice was significant because the only work done by the pornography was bolstering proof of the underlying predicate fact, which is that Collum inappropriately touched the victim. In other words, it "has nothing to do with intent and everything to do with propensity to act a certain way." Milich, Courtroom Handbook on Ga. Evidence I8. As stated above, not only did the jury hear the lewd title of each magazine and DVD, the State also projected the DVD and magazine covers showing extremely explicit pornographic images, and all of the exhibits were given to the jury to review during deliberations. See *Harris*, 314 Ga. 238 at 275-278 (3) (e) (ii) (B) (1) and (2). Finally, while the prejudicial impact of such evidence may be reduced by a trial court's limiting instruction, see *Moton v. State*, 351 Ga. App. 789, 793-794 (833 SE2d 171) (2019), no such limiting instruction was given in this case.

(ii) The State argued below that evidence of the pornographic materials was relevant to corroborate the victim's story, specifically that Collum told her not to go in his closet because he kept pornography there. We conclude that corroboration of the victim's account is a "proper purpose" under Rule 404 (b) and that the remaining pornographic DVDs and magazines were relevant for this purpose. See *Olds*, 299 Ga.

24

at 70 (2), n.6 ("[t]he enumeration in Rule 404 (b) of permissible purposes for which evidence of other acts may be admitted is not exhaustive"). But, to the extent the State needed to prove that Collum did in fact keep pornography in his closet to corroborate the victim's story, the probative value of the evidence was substantially outweighed by its prejudicial impact.

By the State's reasoning, evidence of the pornographic materials corroborated the victim's statement that Collum kept pornography in his bedroom closet which in turn corroborated the victim's statement that Collum had sexually abused her. What little probative value this evidence had in corroborating the victim's story was substantially outweighed by the prejudicial effect of its presentation to the jury. Again, the State was allowed to announce the title of each magazine and DVD while also enlarging pornographic images for the jury to see. Beyond this, the jury was given all of these exhibits to peruse during deliberations. See *Harris*, 314 Ga. 238 at 275 (3) (e) (ii) (B) (1).

If the State sought to corroborate the victim's statement that Collum kept pornography in his closet, the State had far less inflammatory evidence to prove this point, including a photograph, admitted as State's Exhibit 54, showing Collum's

pornography stash in his closet as found by police during the search of his home; the testimony of the detective that pornography was found in Collum's closet during the search; and the victim's mother's testimony that Collum kept pornographic DVDs in his closet. Additionally, State's Exhibit 1, the pornographic DVD identified by the victim as the one Collum showed her and admitted into evidence, established that Collum kept or owned pornography. "The availability of other, less prejudicial, evidence on the same point ordinarily reduces the probative value of a given item of extrinsic evidence." (Citation and punctuation omitted.) *Olds*, 299 Ga. at 76 (2). See also *Harris*, 314 Ga. at 263 (3) (a) ("If the evidence offered is cumulative of other evidence already admitted, its probative value is limited to the additional strength it gives the point already made.") (citation and punctuation omitted). Accordingly, the evidence should have been excluded under Rule 403.

(g) *Admissibility under OCGA § 24-4-414 (a).* Lastly, to the extent the State argues that the pornographic materials were admissible under OCGA § 24-4-414 to show Collum's "lustful disposition," this argument is, at best, spurious. OCGA § 24-4-414 (a) provides: "In a criminal proceeding in which the accused is accused of an offense of child molestation, evidence of the accused's commission of another offense

26

of child molestation shall be admissible and may be considered for its bearing on any matter to which it is relevant." See, e.g., *Edwards v. State*, 357 Ga. App. 318, 324 (3) (850 SE2d 797) (2020) (evidence of defendant's other acts of child molestation were relevant to show his "propensity to commit child molestation" and his "lustful disposition toward young girls"). An "offense of child molestation" does not include the possession of legal pornographic materials and thus OCGA § 24-4-414 is inapplicable.[10] See OCGA § 24-4-414 (d).

(h) *Harmless error analysis.* The trial court's error in admitting the pornographic evidence at issue requires reversal of Collum's convictions unless it can be deemed harmless, "meaning that it is highly probable that the error did not contribute to the verdict." (Citation and punctuation omitted.) *Strong v. State*, 309 Ga. 295, 316 (4) (845 SE2d 653) (2020). See also *Allen v. State*, 310 Ga. 411, 418 (4), n.6 (851 SE2d 541) (2020) ("[f]or nonconstitutional harmless error, the State has the burden to show that it was highly probable that the error did not contribute to the verdict") (citation

---

[10] While an "offense of child molestation" includes conduct that would be a violation of OCGA § 16-12-100.2, the "Computer or Electronic Pornography and Child Exploitation Prevention Act of 2007," see OCGA § 24-4-414 (d) (1), there has never been any contention by the State that Collum possessed child pornography. Compare *Wrice v. State*, 354 Ga. App. 895 (842 SE2d 301) (2020).

and punctuation omitted). "When the error is admitting evidence that should not have been admitted, the harmless-error question turns on how much the wrongly admitted evidence likely mattered to the jury's decision to convict." *Harris*, 321 Ga. at 101-102 (2) (b). Such an

> assessment is usually made by considering how powerful the wrongly admitted evidence was relative to the overall mix of evidence. If, for instance, the wrongly admitted evidence was "relatively benign" or "merely cumulative" of properly admitted evidence and the remaining evidence of the defendant's guilt was quite strong, the State may be able to prove that the error was harmless.

Id. at 102 (2) (b).

Here, we cannot say that the wrongly admitted evidence was "relatively benign" or "merely cumulative," as this Court and our Supreme Court have often concluded in cases deeming improperly admitted evidence harmless. See, e.g., *Hood v. State*, 299 Ga. 95, 106 (4) (786 SE2d 648) (2016) (concluding that the improper admission of evidence of the defendant's prior drug dealing was harmless in light of the strong evidence that he committed the crimes and the other, properly admitted evidence that he had dealt similar drugs on other occasions to people other than the victim). While the jury heard the titles of the pornography found on Collum's cell

phone, which included teen-themed pornography, the jury was not shown sexually graphic images during this testimony. And while multiple witnesses for the State confirmed that they did not find child pornography on Collum's cell phone or in his closet, the detective nonetheless insinuated that the women in the DVDs and magazines could be minors as she had no way of knowing their age.

Nor can we say that the State introduced strong independent evidence of Collum's guilt such that any error in admitting the pornographic evidence was harmless. See *Gaskin v. State*, 334 Ga. App. 758, 763-764 (1) (b) (780 SE2d 426)(2015) ("reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict would have been different in the absence of this error") (citation and punctuation omitted). Compare *Fincher v. State*, 363 Ga. App. 439, 446 (2) (870 SE2d 833) (2022), disapproved on other grounds, *Oliver v. State*, 364 Ga. App. 828, 837 (1) (a) (iii), n.2 (876 SE2d 34) (2022). The State's evidence consisted of testimony from the victim and of those persons to whom she recounted the allegations of sexual abuse as well as the two properly admitted pornographic DVDs that corroborated the victim's testimony. No physical evidence was presented to support the charges. Although the evidence in this case was legally sufficient to

permit the jury to find Collum guilty of the charged crimes, we cannot say it was overwhelming or that the graphic evidence of Collum's pornography definitively did not enter into the jury's evaluation of the case. See *King v. State*, 346 Ga. App. 362, 370 (1) (816 SE2d 390) (2018) (improper admission of defendant's prior conviction in child molestation prosecution was not harmless given the less-than-overwhelming evidence consisting of the victims' testimony and testimony of those to whom the victims disclosed and where there was no supporting physical evidence, defendant denied allegations, and police suspended investigation into one victim's previous allegation that her father inappropriately touched her due to insufficient evidence). And while it is unclear to what extent the State emphasized the improperly admitted evidence or an improper propensity argument in its closing because arguments were not transcribed, the absence of a limiting instruction permitted the jury to consider the evidence for any reason, including to draw an impermissible propensity inference. Compare *Pritchett v. State*, 314 Ga. 767, 780 (2) (c) (879 SE2d 436) (2022).

In short, the State has not proved that it is "highly probable" that this highly prejudicial evidence, admitted in error, did not contribute to the jury's verdict,[11] and we thus reverse Collum's convictions.

2. Given our decision to reverse Collum's convictions due to the trial court's evidentiary error, we need not address his remaining claim of error in which he asserts that his trial counsel rendered ineffective assistance. This claim is "moot or may be rendered moot on retrial, or otherwise rest[s] on circumstances that may or may not recur on retrial." *Flores-Avila v. State*, 374 Ga. App. 48, 55-56 (3) (911 SE2d 235) (2025).

*Judgment reversed. Davis, J., concurs. Barnes, P. J., dissents.*

---

[11] Indeed, the jury acquitted Collum of two counts of child molestation and one count of aggravated child molestation, and during deliberations, the jury twice sent a note to the court asking, "What happens if we cannot come to a unanimous agreement?" See, e.g., *Maqrouf v. State*, 349 Ga. App. 174, 180 (1) (b) (825 SE2d 569) (2019) (noting that jury acquitted defendant of one charge in analyzing harm from erroneous admission of other-act evidence), disapproved on other grounds, *Flowers v. State*, 307 Ga. 618 (837 SE2d 824) (2020).

31

A25A0236.  COLLUM v. THE STATE.

BARNES, Presiding Judge, dissenting.

I do not agree with the majority's conclusion that the trial court committed reversible error by allowing the State to introduce evidence of the pornographic materials found in Collum's bedroom closet (beyond the two DVDs that the victim described Collum showing to her).  Particularly in light of this Court's precedent in *Rider v. State*, 366 Ga. App. 260, 266-270 (3) (b) (883 SE2d 374) (2022), I believe that the trial court acted within its discretion in finding that the pornographic materials were admissible as intrinsic evidence and that the probative value of the pornography was not substantially outweighed by the danger of unfair prejudice under OCGA § 24-4-403 ("Rule 403").  But even if the court erred in admitting the pornographic materials, their admission was harmless. I therefore respectfully dissent.

1. The trial court was authorized to find that evidence of the pornographic movies and magazines found in Collum's bedroom closet was admissible as intrinsic evidence. "Evidence is admissible as intrinsic evidence when it is (1) an uncharged

offense arising from the same transaction or series of transactions as the charged offense; (2) necessary to complete the story of the crime; or (3) inextricably intertwined with the evidence regarding the charged offense." (Citation and punctuation omitted.) *Williams v. State*, 302 Ga. 474, 485 (IV) (d) (807 SE2d 350) (2017). A trial court's ruling on the admissibility of evidence as intrinsic is reviewed only for an abuse of discretion. *State v. Harris*, 316 Ga. 272, 277 (3) (888 SE2d 50) (2023).

In *Rider,* we applied these principles and held that the trial court acted within its discretion in admitting evidence of adult pornographic movies and magazines found in the defendant's bedroom as intrinsic evidence, where the child victims claimed that the defendant had such movies and magazines in his bedroom and showed those materials to them, and where the defendant was charged with child molestation based on allegations that he showed the victims images of adult pornography. See *Rider*, 366 Ga. App. at 269 (3) (b), n. 8. We concluded that evidence of the defendant's possession of the pornography "was inextricably intertwined with the evidence regarding the charged offenses and formed an integral and natural part of an account of the crimes." (Citation and punctuation omitted.) Id.

2

This case involves similar facts. The victim testified at trial that on one occasion, when her mother was away from home for a sleep study, Collum showed her a pornographic video from the DVDs in his closet and then had her go into his bedroom, where he touched her vagina, performed oral sex on her, and had sexual intercourse with her. The victim also testified that Collum told her not to look in his closet because of the "DVDs [that] were in there" and "pictures of naked women." In her recorded forensic interview that was introduced into evidence and played for the jury, the victim described two pornographic DVDs that Collum showed her before molesting her on the night of her mother's sleep study; drew a diagram of his bedroom in which she identified the closet where he kept his DVDs; and related that Collum had told her not to look in the closet because there might be "naked women" in there. Among other charges, Collum was indicted and tried on five counts — two counts of aggravated child molestation, two counts of child molestation (including one count for showing pornographic material to the victim), and one count of enticing a child for indecent purposes — based on the alleged sexual conduct that occurred when the mother was away at her sleep study.

In light of the victim's trial testimony and her statements made during her forensic interview, the trial court, as in *Rider*, was entitled to find that evidence of Collum's possession of pornographic materials was inextricably intertwined with the charged sexual offenses and formed an integral and natural part of an account of those crimes. The evidence was linked in time and circumstances to the charged offenses alleged to have taken place when the victim's mother underwent her sleep study, and the evidence helped explain the context, motive, and set-up for those crimes. The trial court therefore did not abuse its discretion in determining that the pornographic materials were admissible as intrinsic evidence. See *Rider*, 366 Ga. App. at 269 (3) (b), n. 8. See also *Harris v. State*, 310 Ga. 372, 378 (2) (b) (850 SE2d 77) (2020) ("Evidence pertaining to the chain of events explaining the context, motive, and set-up of the crime is properly admitted as intrinsic evidence if it is linked in time and circumstances with the charged crime, or forms an integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury.") (citation and punctuation omitted).

4

2. The question of unfair prejudice is a closer call, given the number of pornographic DVDs cover images[1] and magazines admitted into evidence and described and displayed by the State. However, in light of the applicable abuse-of-discretion standard of review, the trial court was authorized to conclude that the probative value of the pornographic materials was not substantially outweighed by the danger of unfair prejudice under Rule 403.

As in *Rider*, evidence of the pornographic materials found in Collum's closet was relevant and highly probative because it corroborated the victim's claim that Collum had such materials in his closet and showed some of them to her. See *Rider*, 366 Ga. App. at 268 (3) (b) (determining that "[e]vidence of the pornographic movies and magazines was relevant and highly probative because it corroborated the children's claims that [the defendant] had such movies and magazines in his bedroom and showed those materials to them"). See also *Robinson v. State*, 308 Ga. 543, 550-551 (2) (b) (ii) (842 SE2d 54) (2020) (concluding that video that corroborated witness testimony about the crime scene was relevant and probative); *Bentley v. State*, 307 Ga. 1, 5 (2) (a) (834 SE2d 549) (2019) (holding that photograph that corroborated

---

[1] The DVDs recordings were not played for the jury.

witnesses' accounts of the crime was relevant and probative). The prosecutorial need for such corroborating evidence was substantial in light of the defense's attacks upon the victim's credibility, the lack of physical evidence, and the defense's contention that Collum could not really read or write and that it was the victim who instead searched for teen-themed porn on his cell phone. See *Brantley v. State*, 370 Ga. App. 757, 765-766 (3) (899 SE2d 284) (2024) (taking into account, as part of the Rule 403 balancing test, the prosecutorial need for the challenged evidence in light of the defendant's attacks upon the child victim's credibility and the lack of physical evidence). Furthermore, evidence of the teen-themed pornographic materials was relevant and carried significant probative weight because it assisted the State in showing Collum's intent and motive in committing the charged sexual offenses. See *Holzheuser v. State*, 351 Ga. App. 286, 290-291 (1) (a) (ii) (828 SE2d 664) (2019) (concluding that images of child pornography found on the defendant's phone were relevant and probative because the images assisted the State in proving that the defendant intended to expose himself for the purpose of sexual gratification); *Hutcheson v. State*, 361 Ga. App. 890, 894 (1) (864 SE2d 106) (2021) (holding that pictures "of prepubescent or early pubescent boys . . . either completely naked or

6

partially naked with [their] genitalia showing" were properly admitted to "demonstrate that [the defendant] had a sexual interest in boys around the age of the victims"). And the pornographic images themselves, rather than simply testimony describing those images, was "inherently more persuasive regarding the existence of the things they depict." (Citation and punctuation omitted.) *Holzheuser*, 351 Ga. App. at 291 (1) (a) (ii), n. 24.

"The harm that Rule 403 seeks to minimize is not mere prejudice, but 'unfair prejudice,' such as by introducing inflammatory material that has no bearing on the issues at trial." (Footnote omitted.) *Holzheuser*, 351 Ga. App. at 291 (1) (a) (ii). But evidence of the pornographic materials did in fact bear on the issues presented at trial, as discussed above. Moreover, Rule 403 does not require the exclusion of photographic evidence as unfairly prejudicial simply because some of the images are repetitive or overlap in certain respects. See *Robinson v. State*, 342 Ga. App. 624, 632 (2) (805 SE2d 103) (2017) (explaining that photographs that were material and relevant to the issues raised at trial were admissible even if somewhat duplicative and repetitive of other admitted photographs). See also *United States v. Dodds*, 347 F3d 893, 897-899 (I) (11th Cir. 2003) (affirming admission of 66 images of child

pornography under Federal Rule of Evidence 403, where the images were intrinsic to the charged crimes and had several probative uses); *State v. Palacio-Gregorio*, 361 Ga. App. 339, 344 (2) (b) (862 SE2d 605) (2021) (concluding that the probative value of intrinsic evidence in the form of 52 additional images and 3 videos of child pornography found on the defendant's cell phone was not substantially outweighed by the danger of unfair prejudice). It also is well-established that "exclusion of evidence under [Rule 403] is an extraordinary remedy which should be used only sparingly," and "[i]n close cases, the balance should be struck in favor of admissibility." (Citations and punctuation omitted.) *Dixon v. State*, 341 Ga. 255, 260 (1) (b) (800 SE2d 11) (2017). Given how the balance in close cases should be struck, and in light of the circumstances of this case, the trial court acted within its discretion in finding that the evidence of the pornographic materials found in Collum's closet was relevant and probative, and that the probative value of the pornography was not substantially outweighed by the danger of unfair prejudice under Rule 403. See *Rider*, 366 Ga. App. at 268-270 (3) (b) (concluding that admission of adult pornographic videos and magazines found in defendant's bedroom did not violate Rule 403); *Holzheuser*, 351 Ga. App. at 291-292 (1) (a) (iii) (determining that admission of child

8

pornography found on the defendant's phone did not violate Rule 403).  See also

*United States v. Kelley*, 861 F3d 790, 798-799 (II) (B) (8th Cir. 2017) (holding in child

pornography case that admission of evidence of the defendant's use of adult

pornography did not violate Federal Rule of Evidence 403, where the evidence linked

the defendant to the charged crimes); *United States v. Caldwell*, 586 F3d 338, 346 (II)

(5th Cir. 2009) (determining that admission of evidence of the defendant's possession

of adult pornography did not violate Federal Rule of Evidence 403, where the

evidence had "probative value as an integral part of the charged offense").[2]

---

[2] Our Supreme Court's decision in *Harris v. State*, 314 Ga. 238 (875 SE2d 659) (2022) is distinguishable.  In *Harris*, the Supreme Court reversed the defendant's malice murder and child cruelty convictions based on the trial court's failure to sever certain sex crimes involving a different victim and on the State's introduction of extensive, improper evidence of the defendant's sexual activities that occurred weeks, months, and years before the alleged murder, including sexual messages that he sent to minors, photographs of his penis that he sent to various women, and evidence that he hired prostitutes. Id. at 239.  In conducting a Rule 403 balancing as to this evidence of sexual activities, the Supreme Court concluded that the evidence should have been excluded and that the failure to do so constituted reversible error.  See id. at 239, 261-280 (3).  The Supreme Court characterized the aforementioned sexual evidence as of "trivial" and "essentially non-existent" probative value, id. at 274 (3) (e) (ii) (B) & 278 (3) (e) (ii) (B) (2), and the Court explained that "the erroneously admitted evidence added sharper, more damning, and more plainly criminal details to the State's portrayal of [the defendant] as a man of despicable character who deserved punishment." Id. at 284 (5).  In contrast, the challenged pornographic materials in the present case are far more closely linked to the charged sexual offenses, and the materials were no more graphic than the other pornographic evidence introduced by

9

3. Nevertheless, if the trial court erred by failing to exclude the challenged pornography, it was harmless. "The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (Citation and punctuation omitted.) *Anglin v. State*, 302 Ga. 333, 341 (6) (806 SE2d 573) (2017). "In conducting that analysis, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done instead of viewing it in the light most favorable to the jury's verdict." *Jivens v. State*, 317 Ga. 859, 863 (2) (896 SE2d 516) (2023).

Even if the challenged pornographic DVDs and magazines should have been excluded by the trial court, the materials were cumulative of the other highly graphic adult and teen-themed pornographic materials admitted into evidence and reviewed by the jury, including the two pornographic DVDs shown to the victim that the majority concludes were properly admitted into evidence (State Exhibits 1 and 45); two additional pornographic DVDs that were introduced into evidence without objection from the defense (State Exhibits 33 and 34); and the forensic evidence drawn

_____

the State that was either unchallenged by the defense or that the majority opinion concludes was properly admitted.

10

from Collum's cell phone reflecting in graphic language the searches conducted on the phone for teen-themed pornography. Given the pornographic images, titles, and search terms properly admitted in the case, even if the trial court abused its discretion in admitting additional pornographic materials, it is highly probable that the error did not contribute to the verdict.[3] See *Young v. State*, 309 Ga. 529, 538 (3) (847 SE2d 347) (2020) (explaining that the harmful effect of a photograph of the defendant with a gun "was diminished because it was cumulative of other properly admitted evidence, which included evidence pertaining to other pictures of [the defendant] with guns").

In sum, the facts of this case and our precedent justify affirmance. I therefore respectfully dissent.

---

[3] Nor is this a case where the State relied solely on the testimony and prior statements of the victim to prove the charged offenses. The victim's testimony was corroborated by the two pornographic DVDs that the majority determines were correctly admitted, and was further buttressed by the unchallenged admission of the evidence drawn from Collum's cell phone reflecting extensive searches for teen-themed pornography.

11